**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Anderson BENENHALEY, a/k/a**
**Andy, Defendant–Appellant.**

**No. 00–4415.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 1, 2001.

Decided Feb. 20, 2002.

**ARGUED:** Deborah R.J. Shupe, Louthian Law Firm, P.A., Columbia, SC, for Appellant. Jane Barrett Taylor, Assistant United States Attorney, Columbia, SC, for Appellee. **ON BRIEF:** Scott N. Schools, United States Attorney, Columbia, SC, for Appellee.

Before LUTTIG, MOTZ, and TRAXLER, Circuit Judges.

Affirmed in part and vacated and remanded in part by published per curiam opinion. Judge LUTTIG wrote a dissenting opinion.

## OPINION

PER CURIAM.

Anderson Benenhaley challenges his methamphetamine conspiracy conviction and his life sentence for that conviction, in light of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). We affirm the conviction, vacate the sentence, and remand for resentencing.

Benenhaley was indicted for various firearm and controlled substance offenses. The indictments did not specify drug quantity but simply stated that Benenhaley distributed, conspired to distribute, or conspired to possess with intent to distribute an unspecified "quantity" or "quantities" of methamphetamine. Benenhaley pled guilty to possession of firearms as a convicted felon in violation of 18 U.S.C.A. § 922(g) (West 2000); a jury convicted him of conspiracy to possess methamphetamine with intent to distribute it and distribution of methamphetamine, in violation of 21 U.S.C.A. § 841 (West 1997) and § 846 (West 1999).

Attributing 1.9 kilograms of pure methamphetamine to Benenhaley, the district court assigned him an offense level of 36. U.S. Sentencing Guidelines Manual § 2D1.1 (1998). The court then sentenced him to life imprisonment for the conspiracy count and concurrent shorter sentences on the other counts. The life sentence exceeded the statutory maximum otherwise applicable under the then-current version of Section 841(b)(1)(C). 21 U.S.C.A. § 841(b)(1)(C) (West 1997). Benenhaley appeals, challenging both his conviction and sentence.

■ As the Government concedes, *Apprendi* and this court's decisions in *United States v. Promise*, 255 F.3d 150 (4th Cir. 2001) (en banc), and *United States v. Cotton*, 261 F.3d 397 (4th Cir.2001), require that we vacate Benenhaley's sentence and remand for resentencing. *See Promise*, 255 F.3d at 157, 160 (holding that the failure to charge a specific threshold drug quantity in the indictment and to submit the quantity to the jury constitutes plain error affecting a defendant's substantial rights); *and Cotton*, 261 F.3d at 403–04, 405–07 (holding that such an error seriously affects the fairness, integrity, or public reputation of judicial proceedings, so that this court should exercise its discretion to recognize the error even if it has not been raised before the district court).

■ Benenhaley also contends that the absence of a specific drug quantity in his indictment requires reversal of his conviction. However, recently when another defendant, Mario Promise, made the same contention, *Promise*, 255 F.3d at 160 (noting that "Promise asserts that the error is in his conviction"), the *en banc* court expressly rejected the contention. *Id.* ("[w]e conclude that the error was not in Promise's conviction"). The *en banc* court held that an indictment that charges an unspecified drug quantity suffices to support a conviction under 21 U.S.C. § 841, *id.* at 160 and at 186 (Motz, J., joined by Judges Widener, Michael, and King concurring in this part of the principal opinion), and affirmed the conviction despite Promise's direct challenge to it. *Id.* at 165. *See also United States v. Dinnall*, 269 F.3d 418, 423 n. 3 (4th Cir.2001) (concluding that "the error identified by *Promise* is not an error ... in the conviction"). Accordingly

Benenhaley's challenge to his conspiracy conviction fails.

■ Finally, Benenhaley asks us to direct the district court when resentencing him not to attribute to him certain methamphetamine seen in his possession, because a drug-addicted witness's estimate supplied the only evidence of quantity. Evidence underlying a finding of drug quantity must "possess[ ] sufficient indicia of reliability to support its probable accuracy." *United States v. Uwaeme,* 975 F.2d 1016, 1021 (4th Cir.1992). The witness in question testified that he saw Benenhaley with "three or four bags," that he did not see the bags weighed, that he estimated the bags to weigh "about four pounds, maybe five" based on a third party's estimate of their financial value, and that Benenhaley gave him pure methamphetamine out of one of the bags.

The district court used the lower estimate of four pounds, or 1.8 kilograms, and the Government otherwise established 96.65 grams of pure methamphetamine. We have approved district courts' use of the low end of a witness's estimate, *United States v. Lamarr,* 75 F.3d 964, 972–73 (4th Cir.1996), and reliance on an estimate based on a visual comparison to a candy vial. *United States v. Cook,* 76 F.3d 596, 604 (4th Cir.1996). Moreover, in this case the low end of the witness's estimate could almost be halved without any effect on Benenhaley's offense level. U.S. Sentencing Guidelines Manual § 2D1.1(c)(2, 3). Given these circumstances, we see no error in the district court, on remand, again considering the testimony in question.

For the foregoing reasons, we affirm Benenhaley's conviction, vacate his sentence, and remand for resentencing.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED.*

LUTTIG, Circuit Judge, dissenting.

I separately stated my views regarding the proper interpretation of 21 U.S.C. § 841 in *United States v. Promise,* 255 F.3d 150, 168–86 (4th Cir.2001) (*en banc* ), and I need not repeat those views today. However, I noted there that, while the reasoning of the Supreme Court's opinion in *Apprendi* is arguably quite broad, the actual holding of that case is considerably narrower. Although the Court's reasoning could be read to require that any fact that increases a defendant's sentence, even within the statutory range, must be charged in the indictment and proven beyond a reasonable doubt to the jury, the narrower holding is only that the jury must find beyond a reasonable doubt those facts that increase a sentence beyond the maximum authorized by statute.

I explained in *Promise* my view that the majority of our court had mistakenly applied the broader reasoning in *Apprendi*—effectively ignoring both *Apprendi*'s more limited holding and the Supreme Court's own explicit refusal to overrule *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)—to hold that, "in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, such drug quantities must be treated as elements of aggravated drug trafficking offenses," 255 F.3d at 152. As I noted, the *Promise* majority created literally scores of separate offenses within section 841 alone by so holding.

I did not believe at the time that the majority of our court fully understood the consequences of its misunderstanding of *Apprendi,* even for section 841. Now, however, those consequences—not only for section 841 but for all criminal statutes— are becoming painfully more apparent.

Of paramount importance, the reasoning of *Promise* leads inexorably to the conclusion that the actual *convictions* under section 841, and not merely the *sentences* imposed for those convictions, are invalid, whenever merely "a quantity" of controlled substance is charged in the underlying indictment. This follows from two conceptually independent, though related, lines of reasoning.

First, the reasoning of *Promise* applies not only to the statutory provisions of section 841, but also to the sentencing scheme superimposed by the Sentencing Guidelines. The unavoidable results of this principled application of the *Promise* reasoning to the sentencing scheme is that section 841(b)(1)(C) *itself* must also be parsed into multiple offenses, and further, that some allegation regarding drug quantity more specific than merely "a quantity" is now, as a matter of constitutional law, an element of each such offense. Second, it is evident, on the reasoning of *Promise*, that the statutory language of section 841(b)(1)(C), which was never analyzed by the *Promise* majority, also dictates that a specific allegation of drug quantity is an element of every section 841 offense.

On each of these lines of reasoning, it follows that an indictment that alleges only "a quantity" of the drug in question does not charge a section 841 offense at all. In other words, by virtue of the reasoning in *Promise*, it turns out that section 841(b)(1)(C) is not, as the *Promise* majority believed, a catch-all or lesser-included offense, under which defendants may be sentenced even when indictments do not specify drug quantity.

With respect to the first argument, the reasoning marshaled in *Promise* that showed that section 841 actually comprises numerous different substantive offenses likewise shows, when the Sentencing Guidelines are brought into play, that section 841(b)(1)(C) itself comprises multiple separate offenses. The analysis is this. In order to justify its fragmentation of section 841, *Promise* explained that "a fact finding increases a defendant's sentence beyond the statutory maximum whenever it exposes him to a 'penalty *exceeding* the maximum [the defendant] would receive if punished *according to the facts reflected in the jury verdict alone.*'" *Promise*, 255 F.3d at 167 n. 6 (quoting *Apprendi*, 530 U.S. at 483, 120 S.Ct. 2348). *Promise*, therefore, wholly without regard to the language of section 841, defined "statutory maximum" as the maximum penalty that could be imposed based exclusively on the facts found by the jury.[1] On this understanding of *Apprendi*, *Promise* concluded that, where specific threshold drug quantities were not both indicted and proven to the jury beyond a reasonable doubt, a defendant could only be sentenced under section 841(b)(1)(C), to a maximum prison term of 20 years.

The *Promise* majority further believed that "*Apprendi* dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense." 255 F.3d at 156.

---

1. This definition of "statutory maximum" stands in stark contrast to the definition at least implicitly accepted by this court in *United States v. Kinter*, 235 F.3d 192, 199–200 (4th Cir.2000) (approving of the government's argument that in order to find the " 'prescribed statutory maximum' as contemplated in *Apprendi*, one need only look to the language of the statute criminalizing the offense, and no further*"*) (emphasis added). Based on this understanding, the court went on to reject the argument that the Guidelines provide the statutory maximum for *Apprendi* purposes.

Thereby did our court in *Promise* dice section 841 into countless different substantive offenses.

But under the Sentencing Guidelines, U.S.S.G. § 2D1.1, the so-called threshold quantity under section 841(b)(1)(C) is not 5 grams, as under section 841(b)(1)(B), but, rather, 2.5 grams. The Guidelines assign an offense level of 12 to a defendant found to possess less than 2.5 grams of methamphetamine. Assuming away criminal history, which does not substantively alter the analysis, such a defendant is exposed to a sentence of at most 16 months, *not* 20 years. In order to impose a sentence greater than 16 months, a *finding* that the defendant is responsible for 2.5 grams or more must be made, raising the defendant's offense level to 14. The reasoning of *Promise* requires that this element of *a quantity of 2.5 grams or more* be indicted and found by the jury beyond a reasonable doubt. That is, focusing on methamphetamine for example, *Promise*'s reasoning requires the separation of section 841(b)(1)(C) into two distinct offenses— one, the manufacture or distribution of 2.5 grams or more of controlled substance; the other, the manufacture or distribution of less than 2.5 grams—just as that reasoning required that section 841 be separated into its multiple offenses.

Accordingly, *Promise*, without any additional analysis whatever, requires that Benenhaley be sentenced to no more than 16 months imprisonment. To authorize a sentence of twenty years, as the majority does, is, per our own decision in *Promise*, to deprive Benenhaley of his constitutional right to trial by jury.

But, in my view, even this minimum sentence cannot stand, because drug quantity information is an element of each of these new, *Promise*-created section 841(b)(1)(C) offenses, not simply the more culpable of the two. This follows from an analysis of the text of the statute, and, in this case, the Guidelines. *See, e.g., Staples v. United States*, 511 U.S. 600, 604, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (noting that the determination of the elements of an offense is a matter of statutory construction). A violation of the "aggravated" section 841(b)(1)(C) offense (to borrow *Promise*'s terminology) requires the defendant to be responsible for 2.5 grams or more of methamphetamine. *See* U.S.S.G. § 2D1.1. This is the threshold drug quantity that, under *Promise*, must be treated as an element.

A violation of the un-"aggravated" section 841(b)(1)(C) offense, however, requires that the defendant be responsible for less than 2.5 grams; defendants responsible for at least 2.5 grams have committed the *separate* aggravated section 841(b)(1)(C) offense, but *not* the lower offense. This follows from the fact that the Guidelines require a quantity *less than* 2.5 grams in order for the lesser sentence to be applicable. Drug quantity information, then, is an element of both section 841(b)(1)(C) offenses, not merely the aggravated offense, because such information goes to the very definition of the offenses. Of course, this means that drug quantity information is an element of *all* methamphetamine-related section 841 offenses.

To be sure, *Promise* was concerned with statutory maximums (though certainly not in the traditional sense), but the administrative nature of the Guidelines changes nothing. The Guidelines have the force of law. And there is no constitutional difference between the gradations of offenses that exist within section 841(b)(1)(C) by operation of the Guidelines and the gradations of offenses the *Promise* majority created within section 841 as a whole. The Sixth Amendment is no less offended by a judicially-imposed sentence in excess of that authorized by Guidelines (based upon

a judicial finding of quantity), than by a sentence in excess of that authorized by statute (based upon the same judicial finding of quantity). The defendant has been equally deprived of his right to a trial by jury in both circumstances.

The second argument that shows that the section 841 conviction, not just the sentence, must be reversed when quantity is not charged in the indictment rests on *Promise*'s conclusion that sections 841(b)(1)(A), (B), (C), and (D) set forth separate substantive crimes,[2] the elements of each of which are to be found in the text of the statute. *See, e.g., Staples,* 511 U.S. at 604, 114 S.Ct. 1793. Section 841(b)(1)(C) provides, in relevant part, that "[i]n the case of a controlled substance in schedule I or II, . . . , *except as provided in subparagraphs (A), (B), and (D),* such person shall be sentenced to a term of imprisonment of not more than 20 years." (Emphasis added). In order to ascertain whether section 841(b)(1)(C) has been violated, it must be determined (again, using methamphetamine as an example) that the quantity in question is less than 5 grams—*i.e.,* that subsection (B) has not been violated. (Of course, the defendant must also be responsible for less than the section 841(b)(1)(A) threshold quantity of 50 grams, but if he is responsible for less than the section 841(b)(1)(B) quantity of 5 grams, then he necessarily is responsible for less than 50 grams.) It follows from the text of section 841(b)(1)(C) that the fact that the quantity at issue is less than 5 grams *is an element of the section 841(b)(1)(C) offense;* this fact is part of the definition of the offense. For drugs mentioned in sections 841(b)(1)(A) and (B) (excluding marijuana, which presents a slightly more complicated problem) then, to state a violation of section 841(b)(1)(C), the indictment must allege that the defendant is responsible for some positive quantity less than the section 841(b)(1)(B) threshold quantity for that drug.

I will be the first to admit that the fact that the manufactured or distributed quantity does not exceed the threshold amounts applicable under sections 841(b)(1)(A), (B), or (D) (or that a defendant possessed with intent to distribute *less than a certain quantity* ) bears little resemblance to a traditional element. But this oddity is a necessary consequence of interpreting section 841(b)'s *sentencing factors* to be not that at all, but instead to be *substantive offenses.* Unfortunately, *Promise* actually did, and now requires, exactly that. As our court, and our sister circuits, are only now beginning to appreciate, although section 841(b) functions well as a sentencing scheme (albeit one displaced by the Guidelines), it functions dismally as a list of substantive offenses.

Where, as in the present case, the indictment alleges only "a quantity" of methamphetamine, it is impossible to evaluate whether the section 841(b)(1)(C) exception applies or not: "A quantity" could just as easily refer to 50 grams or more or to some quantity between 5 and 50 grams (triggering an aggravated section 841(b)(1)(A) or (B) offense, respectively) as it could refer to one gram (falling squarely within section 841(b)(1)(C)). It follows, therefore, that Benenhaley's indictment does not allege the violation of any federal

---

**2.** Of course, the *Promise* opinion carefully avoids stating that these sections actually define separate substantive offenses. Instead, it claims merely that "specific threshold quantity must be *treated as* an element of an aggravated drug trafficking offense." 255 F.3d at 156 (emphasis added). But these facts, according to *Promise,* must be indicted and proven to a jury beyond a reasonable doubt. In other words, they *are* elements. And because "aggravated drug trafficking offenses" have elements not needed for other section 841 offenses, they are, in fact and in law, separate offenses.

law and that his conviction based upon that indictment is unconstitutional. *See, e.g., Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) ("The Bain case [*Ex Parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887) ], which has never been disapproved, stands for the rule that a court cannot permit a defendant to be tried on charges that are not made in the indictment against him."). An indictment that could just as easily be read to charge any one of at least three separate and distinct offenses cannot be considered constitutionally adequate because it does not serve to inform the defendant of the "nature and cause of the accusation," as required by the Sixth Amendment. *See, e.g., Russell v. United States,* 369 U.S. 749, 762, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Nor, for that matter, could it even serve to protect the defendant from being twice tried for the same offense. Needless to say, it does not follow from the fact that under law (post *Promise* ) the defendant could not be sentenced to more than 20 years, that the defendant was, as a factual and legal matter, charged with an offense that carried a penalty of at most 20 years. That is, that *Promise* is now on the books does not, and cannot, remedy the inadequacy in such an indictment.

In summary, the reasoning of *Promise* leads inescapably to the conclusion that, at least for the drugs explicitly mentioned in sections 841(b)(1)(A) and (B), some definite statement regarding drug quantity is an element of all such section 841 offenses, not merely the so-called "aggravated" offenses. Under *Promise,* at least the appropriate drug quantity ranges (sufficient to establish what offense the indictment alleges) must always be charged in the indictment and proven to the jury beyond a reasonable doubt. It is not, as the Seventh Circuit recently put it, that drug "quantity is not an 'element' of the § 841 offense *in the strong sense* "—whatever

that means. *See United States v. Bjorkman,* 270 F.3d 482, 492 (7th Cir.2001) (emphasis added). It is that drug quantity information is an element of these offenses in the only sense currently known to the law, and therefore must be charged in the indictment and proven before the jury beyond a reasonable doubt.

Despite our unexplained and unsupported statements to the contrary in *Promise, United States v. Dinnall,* 269 F.3d 418 (4th Cir.2001), and here, the error in indictment I have identified above taints the conviction and not merely the sentence. *Under the reasoning of Promise, it bears repeating, Benenhaley's indictment failed to charge any crime under federal law.* Although one court has held on the authority of the Supreme Court's decisions in *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), and *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), that such an omission of a critical element from an indictment does not invalidate the conviction, *see Bjorkman,* 270 F.3d at 490 (holding that "a conviction may be affirmed on plain-error analysis if the charge omits an element and the defendants do not object before or at trial"), no court that actually *analyzed* those cases could fail to recognize that at issue in both were omissions from *jury instructions,* not omissions from *indictments.* And, of course, no court that did understand this difference between *Johnson* and *Neder,* on the one hand, and cases like today's and that before us in *United States v. Cotton,* 261 F.3d 397 (4th Cir.2001), on the other, would hold—much less by bare citation—that *Johnson* and *Neder* directly control disposition of cases like the latter, wherein elements of offense are entirely omitted from the indictment (as opposed to from the jury instruction). For, while these precedents obviously would have little if any relevance in the course of addressing whether the omission of an element from

an indictment is subject to plain error review, it would be judicial treachery to "elect to ignore" the difference between the omissions from jury instructions at issue in *Johnson* and *Neder* and the omissions from indictments at issue here and in *Cotton,* in the course of holding, *on the authority of Johnson and Neder,* that the omission of an element from an *indictment* is subject to plain error review.

Because the present indictment omits an essential element of the offense charged (and the elements alleged do not otherwise constitute an offense), Benenhaley's conviction for violation of section 841 simply cannot stand. This is a result that our court, like every other Court of Appeals that has misapplied *Apprendi* to section 841, is at pains to avoid. But it is a result that is now analytically and constitutionally required by our holding (however mistaken) in *Promise.*