UNITED STATES of America,
Plaintiff–Appellee,

v.

Carmichael CANNADY, a/k/a Stokey,
Defendant–Appellant.

No. 00–4024.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 29, 2001.

Decided March 22, 2002.

**ARGUED:** Cheryl Johns Sturm, Chadds Ford, Pennsylvania, for Defendant–Appellant. James McCormick Webster, III, Assistant United States Attorney, Baltimore, Maryland, for Plaintiff–Appellee. **ON BRIEF:** Stephen M. Schenning, United States Attorney, Baltimore, Maryland, for Plaintiff–Appellee.

Before LUTTIG, TRAXLER, and KING, Circuit Judges.

Affirmed by published opinion. Judge TRAXLER wrote the majority opinion, in which Judge KING joined. Judge LUTTIG wrote an opinion concurring in part and dissenting in part.

## OPINION

TRAXLER, Circuit Judge.

Carmichael Cannady pleaded guilty to a drug-related conspiracy charge and was sentenced to 174 months of imprisonment. Cannady appeals, contending that the district judge violated Rule 11(e)(1) of the Rules of Criminal Procedure by participating in the plea negotiations, that his guilty plea was not knowingly and voluntarily made, and that his indictment was defective. We affirm.

### I.

Cannady was charged in a four-count indictment and was scheduled to begin trial on June 15, 1999. That day, Cannady and the government reached an agreement whereby Cannady would plead guilty to a single count of conspiracy to distribute and possess with intent to distribute cocaine and heroin. The plea agreement included a waiver of Cannady's right to initiate proceedings under 28 U.S.C.A. § 2255, a provision that the government apparently had informed Cannady was required by the district judge.

At the beginning of the plea proceedings, counsel for Cannady raised the § 2255 waiver issue, stating that "[w]ith the plea agreement, the government put in, and I guess they really want it, and they said it is a requirement by you that he waives his right to a 2255 collateral proceeding." J.A. 22. The judge responded, "Right." J.A. 22. Later in the proceedings, the district judge stated:

> The point is I'm not going to waste time by taking a guilty plea and then having him file a 2255 that says Mr. Glaser [Cannady's attorney] didn't prepare for trial; and, therefore, I want to withdraw my plea and have a trial later two years from now. That is not going to happen.
>
> So either he decides to waive the 2255, or we are going to go to trial, and I will get the jury down here this afternoon and we'll start.
>
> \* \* \*
>
> Three years from now after the 4th Circuit sends it back as a result of a 2255, either he is satisfied completely with what is going on, or he is not. We still have a jury standing by. I will get them down here and we'll start the trial.
>
> So that's the way it is. You know, life has decisions to be made. I am perfectly willing to start the trial at 1:00 o'clock. We'll get the jury here and we'll start.
>
> So it is your call, Mr. Cannady. The plea agreement does call for this. You have to knowingly, intelligently, and voluntarily, waive that right under the plea agreement.

\* \* \*

I am not going to sit here and waste time with a plea agreement where you intend, as soon as you get in jail, to file a 2255 and start the whole thing over again. That ain't going to happen.

J.A. 24–25. When Cannady said that he did not know what a 2255 motion was, J.A. 25, the judge responded, "[y]ou will find out as soon as you get to a federal system." [1] J.A. 26. Then, referring to the § 2255 waiver, the judge stated:

[I]f that's what the government wants, and if that is in the plea agreement, if you don't agree to that, there is no agreement. I will put it that way. If you agree to it, there is an agreement. If you don't, you don't. And we're going to start the trial, in fact, in exactly 50 minutes. The court stands in recess.

J.A. 26.

Cannady then interjected that he had accepted the plea agreement, which prompted the district judge to ask Cannady's attorney why he had raised the § 2255 issue. Counsel for Cannady explained that while Cannady wanted to plead guilty, Cannady wanted to see if the court would accept a plea that did not include such a waiver. Counsel for Cannady also explained that he had advised Cannady that the plea agreement, with the § 2255 waiver, was in Cannady's best interest and that he had advised Cannady to accept the deal.

The district judge was still hesitant to accept the plea, telling counsel that

what I am presented with is a big fur ball. I don't like fur balls. . . . You're handing me this plea agreement, signed with a big caveat. I don't like that.

So what we are going to do is, we're going to start the trial in 46 minutes. I am not going to accept the plea agreement.

J.A. 28–29. Cannady interjected again, telling the judge that he had signed the plea agreement, and counsel for Cannady again told the judge that Cannady wanted to plead guilty even with the § 2255 waiver included as part of the agreement. The district judge then gave Cannady fifteen minutes to make sure he wanted to plead guilty. The judge told Cannady: "We are not going to hedge, we are not going back and forth. We are not going to have a fur ball. Either you voluntarily, knowingly, and intelligently, decide to plead guilty under the terms and conditions of this plea agreement, or we start the trial at 1:00 precisely." J.A. 29–30.

After the recess, Cannady entered a guilty plea, which the judge accepted. During the plea colloquy, the district judge told Cannady that he faced a minimum sentence of ten years and a maximum sentence of life. The judge did not inform Cannady that drug quantity was an element of the crime or that the government would be required to prove quantity beyond a reasonable doubt.

## II.

At the time Cannady pleaded guilty, Rule 11(e)(1) of the Federal Rules of Criminal Procedure provided that "[t]he attorney for the government and the attorney for the defendant . . . may engage in discussions with a view toward reaching a[ ] [plea] agreement," and that the district court "shall not participate in any such discussions." Fed.R.Crim.P. 11(e)(1) (1999).[2] Although this court has never

---

**1.** As will be discussed in footnote three, Cannady in this action does not seek to invalidate the waiver of his right to initiate proceedings under § 2255.

**2.** The current version of the rule details the types of agreements that may be entered into by the parties and provides that "[t]he court shall not participate in any discussions be-

addressed Rule 11(e)(1) in a published opinion, the rule is strictly interpreted by other circuits. *See United States v. Miles,* 10 F.3d 1135, 1139 (5th Cir.1993) ("Rule 11(e)(1) prohibits absolutely a district court from all forms of judicial participation in or interference with the plea negotiation process." (internal quotation marks omitted)); *United States v. Corbitt,* 996 F.2d 1132, 1134 (11th Cir.1993) (per curiam) (explaining that Rule 11(e)(1) establishes "an absolute prohibition on all forms of judicial participation" in 'plea negotiations (internal quotation marks omitted)); *United States v. Bruce,* 976 F.2d 552, 558 (9th Cir.1992) ("[T]he unambiguous mandate of Rule 11 prohibits the participation of the judge in plea negotiations under *any* circumstances: it is a rule that ... admits of no exceptions.").

On appeal, Cannady contends that the district judge violated Rule 11(e)(1) in two ways. First, Cannady contends that the judge's comments during the plea proceeding amounted to participation in the plea negotiations. Second, Cannady contends that the judge participated in the plea negotiations by instructing the government to include § 2255 waivers in all plea agreements brought before him. We address these arguments in turn.

## A.

■ Cannady argues that the district judge participated in the parties' plea negotiations through his rather extensive comments during the plea proceeding about § 2255 waivers. At the time these comments were made, however, the parties had reached a definite agreement that had been reduced to writing and executed by Cannady and the government, all without any direct involvement by the district judge. While the judge had yet to accept the plea and approve the agreement, the agreement was final and complete as between the parties concerning any such plea

tween Cannady and the government. Because the plea negotiations between the parties had come to an end and the parties had signed a written plea agreement before the district judge was involved, it is hard to characterize the judge's comments as participation in any discussions that were conducted "with a view toward reaching a[] [plea] agreement," which is all that the plain language of Rule 11(e)(1) then prohibited. *See United States v. Telemaque,* 244 F.3d 1247, 1249 (11th Cir.2001) (per curiam) (finding no violation of Rule 11(e)(1) when the district judge, at the request of the defendant's attorney, discussed certain terms of an already-signed plea agreement with the defendant); *United States v. Johnson,* 89 F.3d 778, 782 (11th Cir.1996) ("Because no plea discussions occurred here, the literal terms of the rule do not apply.").

However, where necessary to serve the purposes of Rule 11(e)(1), courts have found violations of the rule even in cases where the district judge technically did not participate in "discussions with a view toward a[] [plea] agreement." *See Johnson,* 89 F.3d at 782 (noting that "the decisions under [Rule 11(e)(1)] have put a gloss on the rule to implement a broader purpose"). Rule 11(e)(1)'s strict prohibition against judicial participation in plea negotiations is widely viewed as serving several purposes:

> First, it diminishes the possibility of judicial coercion of a guilty plea, regardless whether the coercion would actually result in an involuntary guilty plea. Second, the judge's involvement in the negotiations is apt to diminish the judge's impartiality. By encouraging a particular agreement, the judge may feel personally involved, and thus, resent the defendant's rejection of his advice. Third, the judge's participation creates a misleading impression of his role in the

agreement." Fed.R.Crim.P. 11(e)(1) (2001).

proceedings. The judge's role seems more like an advocate for the agreement than a neutral arbiter if he joins in the negotiations.

*United States v. Daigle,* 63 F.3d 346, 348 (5th Cir.1995) (citations omitted); *see also United States v. Bierd,* 217 F.3d 15, 19 (1st Cir.2000) (offering somewhat different formulation of the purposes of Rule 11(e)(1)); *Bruce,* 976 F.2d at 557 (same). We will assume that it is proper to extend Rule 11(e)(1) beyond its plain terms in order to give effect to these purposes, as other circuits have done. But even considering these purposes, we find no error.

First, contrary to Cannady's assertion, we find nothing coercive about the district judge's comments during the plea proceeding. As noted above, Cannady and the government, on the day the trial was scheduled to begin, reached an agreement that was satisfactory to all concerned. But when the agreement was presented to the court, Cannady began inquiring as to whether the judge would allow him to change the terms to which Cannady had already agreed. In effect, Cannady was attempting to reopen the negotiation process and involve the district judge in the renewed negotiations, which the district court declined to do. In the end, the district court may have given Cannady a relatively short time to decide, once and for all, whether he wanted to accept the terms of the plea agreement. However, by reminding Cannady that his trial was scheduled to begin that day and that he no longer had the luxury of lingering over a decision, the court was only requiring Cannady to make *a* decision—either plead guilty or go to trial. But nothing in the court's comments can be viewed as coercing Cannady into pleading guilty.[3]

When we consider the district judge's comments in light of the remaining purposes behind Rule 11(e)(1), we still cannot conclude that Rule 11(e)(1) was violated. The judge never suggested that Cannady should plead guilty or otherwise advocated a particular course of action. Certainly the judge's comments during the plea proceeding made it clear that he generally favored the inclusion in plea agreements of waivers of § 2255 rights. But these comments occurred during the district judge's attempts to ensure that Cannady was

---

3. In this action, Cannady seeks only to set aside his guilty plea; he does not seek to invalidate the § 2255 waiver itself. But in the course of arguing that the district judge coerced him into accepting the plea agreement, Cannady states that waivers of the right to initiate § 2255 proceedings "ha[ve] been held illegal by many if not all appellate courts." *See* Brief of Appellant at 17. This statement is simply incorrect. Although this court has not yet directly addressed the validity of such waivers, the courts considering the issue have found § 2255 waivers to be generally valid, subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. *See Garcia–Santos v. United States,* 273 F.3d 506, 509 (2nd Cir. 2001) (per curiam); *United States v. Cockerham,* 237 F.3d 1179, 1183 (10th Cir.2001), *cert. denied,* — U.S. —, 122 S.Ct. 821, 151 L.Ed.2d 703 (2002); *DeRoo v. United States,* 223 F.3d 919, 923 (8th Cir.2000); *Watson v. United States,* 165 F.3d 486, 488–89 (6th Cir. 1999); *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir.1994) (per curiam); *United States v. Abarca,* 985 F.2d 1012, 1014 (9th Cir.1993); *see also United States v. Brown,* 232 F.3d 399, 405–06 (4th Cir.2000) (in case where plea agreement included waiver of direct appeal and § 2255 rights, concluding that waiver of direct appeal was valid and enforceable, but not addressing the § 2255 waiver). Some courts, however, have concluded that the right to file a § 2255 action based on counsel's ineffectiveness with regard to the negotiation of the plea or the voluntariness of the plea is not barred by the waiver. *See Cockerham,* 237 F.3d at 1184; *DeRoo,* 223 F.3d at 924; *Jones v. United States,* 167 F.3d 1142, 1145 (7th Cir.1999). Should Cannady later elect to bring a § 2255 action, the scope and effect of the waiver will then be ripe for consideration.

knowingly and voluntarily entering into the agreement, which the judge, of course, was required to do. *See* Fed.R.Crim.P. 11(d) (requiring a district court to ensure that guilty pleas are voluntarily made); *United States v. Carver,* 160 F.3d 1266, 1269 (10th Cir.1998) ("[O]nce the parties have 'hammered out' the details of their agreement, Rule 11(e) does not prevent the sentencing judge from questioning the defendant regarding the terms, consequences, and acceptance of the plea agreement or from providing the defendant with information relating to these matters."). The district judge was presented with a defendant who was effectively seeking the judge's permission to delete from a plea agreement a term that the defendant had already accepted, and the judge's comments certainly revealed his frustration with the situation. But given the unusual circumstances of this case, we cannot conclude that the district judge's comments amounted to a violation of Rule 11(e)(1). *See Carver,* 160 F.3d at 1269 (finding no Rule 11(e)(1) violation where the judge during a "problematic interchange" made comments that "evidenced some frustration," because the "comments were prompted by an attempt to resolve the inconsistent positions taken by the defendant during the sentencing hearing and were, if anything, related to defendant's consideration of whether or not to withdraw his *already negotiated* plea agreement").

### B.

Having considered the effect of the district judge's comments during the plea proceeding itself, we now consider Cannady's claim that the judge participated in the plea negotiations by directing the government's attorneys to include in all plea agreements the defendant's waiver of the right to collaterally challenge the guilty plea.

■ If a district judge instructs the government to include a particular provision in all of its plea agreements, such an instruction, made only to the government and not in the context of any particular plea negotiation, would not appear to be, in the strictest sense, the equivalent of participation in plea negotiations between the government and any given defendant. It could be argued, however, that by directing the inclusion of a particular provision, the judge in effect has become a before-the-fact participant in every plea negotiation undertaken by the government. Should a defendant balk at the term required by the district judge, the government will almost assuredly explain the judge's directive, thus leaving a defendant who wants to plead guilty with no real choice but to accept the provision required by the judge. Similarly, the government will include the term in every plea agreement, even in cases where the government would not have otherwise insisted on the term. As to any given plea negotiation, then, the district judge's directive would have the same effect as would the judge being physically present during each negotiation and instructing the parties that no agreement would be accepted unless it included the particular provision. *Cf. United States v. Kraus,* 137 F.3d 447, 455 (7th Cir.1998) (finding violation of Rule 11(e)(1) because, *inter alia,* the district judge's comments about terms that would be acceptable "almost surely had the effect of directing the parties toward one set of alternatives to the possible exclusion of others that the parties themselves might have explored"). We need not, however, decide whether it is proper for a district judge to require all plea agreements brought before him to include particular terms, because the record in this case is insufficient to support Cannady's claim that the judge issued such a directive.

At the beginning of the plea proceedings, counsel for Cannady stated that the government "said it is a requirement by you that [Cannady] waives his right to a 2255 collateral proceeding," to which the district judge responded, "Right." J.A. 22. Certainly this response could mean, as Cannady contends, that the district judge in fact required the inclusion of § 2255 waivers in all plea agreements brought before him. However, the district judge, referring to the § 2255 waiver, later said to Cannady, "if that's what the government wants, and if that is in the plea agreement, if you don't agree to that, there is no agreement." J.A. 26. This statement seems to be inconsistent with Cannady's claim that the § 2255 waiver was required by the district judge. Given the ambiguity of the record before us, we cannot draw any conclusions about what the district judge did or did not say to the government with regard to § 2255 waivers.[4] And because this aspect of Cannady's Rule 11(e)(1) challenge is dependent on his assertion that the district judge required the inclusion of a § 2255 waiver in all plea agreements, the challenge necessarily fails.[5]

### III.

Cannady also raises several challenges to his guilty plea based on the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We considered the effect of *Apprendi* in *United States v. Promise*, 255 F.3d 150 (4th Cir.2001) (en banc), *petition for cert. filed*, Sept. 20, 2001 (No. 01–6398). In *Promise*, this court concluded that under *Apprendi*, drug quantity is an element of the aggravated drug offenses set forth in 21 U.S.C.A. §§ 841(b)(1)(A) and 841(b)(1)(B) (West 1999 & Supp.2001). *See Promise*, 255 F.3d at 156. Therefore, unless the quantity of drugs is alleged in the indictment and submitted to the jury, the defendant may be convicted only under 21 U.S.C.A. § 841(b)(1)(C) (West Supp.2001), which governs offenses involving an unspecified quantity of drugs and sets forth a maximum sentence of twenty years. *See id.; see also United States v. Martinez*, 277 F.3d 517, 528–29 (4th Cir.2002). The indictment in this case did not allege the quantity of drugs involved. Thus, under *Apprendi* and *Promise*, Cannady could be convicted and sentenced only for a conspiracy to violate § 841(b)(1)(C).

### A.

Cannady pleaded guilty before the Supreme Court's decision in *Apprendi* and this court's decision in *Promise* were filed. Therefore, during the plea colloquy, the district court did not inform Cannady that drug quantity was an element of the drug offense underlying his conspiracy charge. In addition, the district court informed Cannady that he faced a maximum sentence of life imprisonment, instead of the maximum sentence of twenty years allowed after *Apprendi*. Cannady contends

4. In its brief, the government asserts that the district judge never directed that all plea agreements include a § 2255 waiver, but merely suggested that the government consider including such a term. During the plea proceeding, however, the government's attorney involved with Cannady's plea offered no information about the nature of the judge's statement.

5. Nothing in the record suggests that Cannady ever raised this argument below, which would require review of the issue under a plain error standard. *See United States v. Vonn*, 122 S.Ct. at 1048–49 (holding that Rule 11 errors not raised to the district court are reviewed for plain error only); *United States v. Martinez*, 277 F.3d 517, 527 (4th Cir.2002) (same). However, because we conclude that the district court did not violate Rule 11(e)(1), the standard of review is not critical to our analysis of this issue.

that by virtue of these errors, his plea was not knowingly and voluntarily made and should therefore be vacated. *See* Fed. R.Crim.P. 11(c) ("Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands ... (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law...."). Because Cannady makes these arguments for the first time on appeal, they are reviewed for plain error only. *See United States v. Vonn,* — U.S. ——, 122 S.Ct. 1043, 1048–49, 152 L.Ed.2d 90 (2002); *Martinez,* 277 F.3d at 527.

We can easily dispose of Cannady's first contention. As noted above, drug quantity is not an element of § 841(b)(1)(C) violations. The district court, therefore, committed no Rule 11 error, plain or otherwise, when advising Cannady of the nature of the charges against him. *See Martinez,* 277 F.3d at 530.

Cannady's challenge based on the district court's advice about the maximum sentence faced by Cannady, however, requires additional analysis. Although the district court's statement that Cannady faced a maximum sentence of life imprisonment was correct at the time it was made, the information is no longer correct after *Apprendi* and *Promise.* Because the law changed between the time of the plea and this appeal, we treat the district court's now—incorrect information as plain error. *See Martinez,* 277 F.3d at 530, 532. The mere fact that error occurred, however, is not enough; to warrant relief, Cannady must also establish that he was prejudiced by the error. *See* Fed.R.Crim.P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."); *Vonn,* 122 S.Ct. at 1048 (explaining that under plain error review, the defendant "has the burden to show that his substantial rights were affected" (internal quotation marks omitted)); *Martinez,* 277 F.3d at 532 (explaining that a defendant raising a Rule 11 error for the first time on appeal bears the burden of establishing that he was prejudiced by the district court's error).

Cannady, however, makes no argument in his brief as to how the district court's advice about the maximum sentence he faced affected his decision to plead guilty, nor does he contend that he would not have pleaded guilty if he had known that his sentence could not have exceeded twenty years. Instead, Cannady simply points out the error and suggests that the existence of the error entitles him to relief. This is clearly insufficient to carry his burden of establishing "that, absent the Rule 11 errors, he would not have entered into his plea agreement." *Martinez,* 277 F.3d at 532.

Moreover, there is nothing in the record submitted to this court that would support such a conclusion. Although it is apparent from the record that Cannady would have preferred that his plea agreement not include the § 2255 waiver, it is even more apparent that Cannady did not want to go to trial under any circumstances. *See* J.A. 46 ("Judge Smalkin, I am not trying to waste your time. I'm signing this plea voluntarily."); J.A. 47 ("I really don't want to say anything, Judge Smalkin, to make me go to trial. I don't want to go to trial. I do want to sign this plea agreement."). In addition, Cannady received considerable benefits from the plea agreement—the government dropped three charges carrying substantial penalties [6] and stipulated to

---

**6.** The charges dropped by the government were: (1) distribution and possession with

intent to distribute heroin, for which Cannady

drug quantities involved in the conspiracy count to which Cannady pleaded guilty. Under these circumstances, the district court's error with regard to the maximum sentence faced by Cannady does not warrant the setting aside of Cannady's guilty plea. *See Martinez,* 277 F.3d at 532–33 (concluding that the defendant failed to carry his burden of showing prejudice from the district court's incorrect advice about the maximum sentence faced by the defendant).

## B.

■ Cannady also contends that the indictment is invalid after *Apprendi* because it did not allege the quantity of drugs involved in the drug conspiracy. This argument is without merit. The failure to allege drug quantity in an indictment does not invalidate the indictment, but instead prevents the court from sentencing the defendant to more than the twenty years authorized by § 841(b)(1)(C). *See United States v. Dinnall,* 269 F.3d 418, 423 n. 3 (4th Cir.2001); *Promise,* 255 F.3d at 160. Because Cannady was sentenced to 174 months, no error arises from the omission of drug quantity from the indictment.[7]

## IV.

We conclude that Cannady's indictment was sufficient, and we find no error in the conduct of the plea proceeding that warrants vacating Cannady's guilty plea. Accordingly, we hereby affirm Cannady's conviction and sentence.

*AFFIRMED.*

LUTTIG, Circuit Judge, concurring in part and dissenting in part.

I concur in all of the majority's opinion, except for Part III(A), wherein the majority rejects Cannady's claim that his indictment was defective because it failed to allege drug quantity. For the reasons explained in *United States v. Benenhaley,* 281 F.3d 423, 2002 WL 242337 (4th Cir.) (Luttig, J., dissenting), I believe that the majority's view that "drug quantity is not an element of § 841(b)(1)(C) violations," majority op. at 11, is incorrect.

---

faced a (post-*Apprendi* ) maximum sentence of twenty years, *see* 21 U.S.C.A. § 841(b)(1)(C) (West Supp.2001); (2) conspiracy to use and carry firearms in relation to a drug trafficking offense, for which Cannady faced a maximum sentence of twenty years, *see* 18 U.S.C.A. §§ 924(c)(1) & 924(*o*) (West 2000); and (3) possession of ammunition by a felon, *see* 18 U.S.C.A. § 922(g) (West 2000), for which Cannady faced a maximum sentence of ten years, *see* 18 U.S.C.A. § 924(a)(2) (West 2000).

**7.** Cannady's suggestion that the indictment was defective because it did not allege his role in the offense (for which the district court enhanced Cannady's base offense level during sentencing) is likewise without merit. *See United States v. Kinter,* 235 F.3d 192, 199–201 (4th Cir.) (concluding that *Apprendi* does not affect a judge's application of enhancements under the Sentencing Guidelines when the enhancement does not increase the defendant's sentence beyond the statutory maximum), *cert. denied,* 532 U.S. 937, 121 S.Ct. 1393, 149 L.Ed.2d 316 (2001).