**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 14-4418**

_____

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

CHRISTOPHER STEWART WILSON, a/k/a Chris,

                Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:12-cr-00353-BO-1)

_____

Argued: October 29, 2015         Decided: December 16, 2015

_____

Before MOTZ, KING, and THACKER, Circuit Judges.

_____

Affirmed in part and vacated and remanded by unpublished per curiam opinion.

_____

**ARGUED:** James C. White, LAW OFFICE OF JAMES C. WHITE, P.C., Chapel Hill, North Carolina, for Appellant. Phillip Anthony Rubin, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Michelle M. Walker, LAW OFFICE OF JAMES C. WHITE, P.C., Chapel Hill, North Carolina, for Appellant. Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In November 2011, without a warrant, police surreptitiously placed a GPS tracker on a car belonging to Christopher Wilson, a "person of interest" in several robberies. Information gathered from the GPS tracker led to Wilson's arrest for a series of robberies. A federal grand jury subsequently indicted Wilson on one count of conspiracy to interfere with commerce by threats and violence, as well as multiple counts of interference with commerce by threats and violence, possessing a firearm in furtherance of a crime of violence, bank robbery, and aiding and abetting these offenses.

Wilson moved to suppress the evidence resulting from the warrantless use of the GPS tracker. He argued that United States v. Jones, 132 S. Ct. 945 (2012), decided after police placed the tracker on his car, rendered the search illegal. The district court denied the motion to suppress, reasoning inter alia that the good-faith exception to the exclusionary rule made the evidence obtained in the search admissible.

Wilson then signed a plea agreement. In it, he pled guilty to some of the counts in the indictment as well as two counts added in a superseding criminal information, which the Government filed as part of the plea agreement. However, at Wilson's Rule 11 hearing, his counsel notified the court that Wilson no longer wanted to agree to the negotiated plea.

2

In response, the district court strongly and repeatedly urged Wilson to plead guilty pursuant to the agreement. The judge opined that Wilson's experience in state court "may be giving [him] a false sense of security," and that this was "a situation where someone has no comprehension of how deep the hole is." The court addressed Wilson directly, asking "What's your problem? I mean, you are facing an ocean full of time and . . . you think you are going to get out? You are not going to get out. I mean, what's your problem?" The court described the negative results of going to trial in various ways:

> [N]o one is going to let you, unless you insist, testify because you are an armed robber and that's your career . . . these other three guys, who are your allies, are going to line up to get Rule 35's and get out of jail, and they're going to testify against you and you are going to be hung out with whatever it is, a hundred year sentence.

The judge also told Wilson that, if convicted at trial, "[he] [would] be gone forever," and suggested that he would die in prison.

Wilson repeatedly told the court that he had thought his decision through and did not want to agree to the negotiated plea. When the district court asked Wilson if he had thought through the consequences of forgoing the plea deal and going to trial, Wilson replied, "Yes, sir." Instead of permitting Wilson to make this choice, the court continued the hearing for two

3

weeks so that Wilson could "take a cooling off period" and "decide[] whether or not this is a bad deal."

Ten days later, Wilson's counsel filed a motion to withdraw as counsel because of a "breakdown of the attorney-client relationship," which the court granted. Four months later, after Wilson had been appointed new counsel, the district court conducted the continued Rule 11 hearing. Due to equipment failure, no transcript of this hearing exists. Pursuant to Federal Rule of Appellate Procedure 10(c), the district court approved a statement of the proceedings submitted by the parties.

The approved (but extremely brief) statement describing this second hearing does not indicate that the court informed Wilson of his right to plead not guilty, his right to a jury trial, or several of the other requirements of the Rule 11 colloquy. Notably, the statement does not indicate that the judge ascertained whether Wilson's plea was voluntary. While the statement asserts that Wilson's counsel "recalls that the Appellant acknowledged that he understood the terms of the plea agreement and appeal waiver," it also states that Wilson himself "does not recall being informed of or acknowledging that he understood the terms of the plea agreement or appeal waiver." The record contains no affidavits from any of the individuals actually present at the hearing.

4

At this second hearing, Wilson pleaded guilty to four counts of bank robbery and conspiracy to commit bank robbery and possessing a firearm as a felon. According to the Government's statements at oral argument, this plea agreement differed from the original plea agreement in that it contained two fewer counts of bank robbery. After the district court sentenced Wilson to 293 months' imprisonment, he timely noted this appeal, in which he argues that the trial court's participation in his plea discussion constituted plain error under Rule 11(c) and so requires that we vacate his plea.[*]

Rule 11(c) provides that "[a]n attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement," but "[t]he court must not participate in these discussions." Fed. R. Crim. P. 11(c)(1). The prohibition on judicial involvement furthers "three principal interests: it diminishes the possibility of judicial coercion of a guilty plea; it protects against unfairness and partiality in the judicial process; and it eliminates the misleading impression that the judge is an advocate for the agreement rather than a

---

[*] Wilson also initially appealed the denial of his suppression motion. However, this court has already concluded that the good-faith exception does indeed render admissible evidence obtained by warrantless GPS trackers prior to Jones. See United States v. Stephens, 764 F.3d 327, 338 (4th Cir. 2014). We therefore affirm the district court's denial of Wilson's suppression motion.

5

neutral arbiter." United States v. Bradley, 455 F.3d 453, 460 (4th Cir. 2006) (quoting United States v. Cannady, 283 F.3d 641, 644-45 (4th Cir. 2002)) (internal quotation marks omitted).

Because Wilson did not object to the judge's involvement during the plea discussions, we review his claim under the rigorous plain error standard. See United States v. Sanya, 774 F.3d 812, 815 (4th Cir. 2014). Wilson must establish that "(1) the asserted violation of Rule 11(c)(1) is error, (2) the error is plain, and (3) the error affected [his] substantial rights." Bradley, 455 F.3d at 461. To establish that the error affected his substantial rights, Wilson must show "a reasonable probability that, but for the error, he would not have entered the plea." United States v. Davila (Davila I), 133 S. Ct. 2139, 2147 (2013). If these three conditions are met, we can exercise our "discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Bradley, 455 F.3d at 461.

The Government rightly concedes that the district court's participation in Wilson's plea discussions violated Rule 11(c)(1) and that this error was plain. Thus, we need only consider the third and fourth prongs of plain error review: whether the error affected Wilson's substantial rights and whether it seriously affected the integrity of judicial proceedings. Because the record lacks any indication that

6

Wilson's eventual guilty plea was voluntary, we conclude that Wilson has satisfied both prongs.

At the initial Rule 11 hearing, the district court strongly urged Wilson to agree to the negotiated plea deal. The judge commented on the strength of the Government's evidence, questioned Wilson's reasons for proceeding to trial, and criticized Wilson's rejection of the plea agreement. Thus, this clearly "is not a case involving a single or even a few brief remarks by the court." Braxton, 784 F.3d at 243. Nor were the remarks impartial, as in Cannady, 283 F.3d at 645, where the judge "never suggested that Cannady should plead guilty" but only "requir[ed] Cannady to make a decision -- either plead guilty or go to trial." Instead, in response to Wilson's rejection of the plea deal, the district court rebuked him and ended the hearing. Although the record indicates that Wilson was calm and cogent at the hearing, the judge expressly said Wilson needed a "cooling off period" -- that is, a period during which Wilson would change his mind and accept the plea deal. When the second hearing occurred months later, Wilson did accept a plea deal.

Importantly, in circumstances that are hopefully unique to this case, nothing in the record establishes that Wilson's ultimate guilty plea was voluntary. Although a defendant's assertion of voluntariness during the Rule 11 colloquy will not

by itself "dispel [our] concern" that judicial participation rendered a plea involuntary, Braxton, 784 F.3d at 245, such an assertion does inform our inquiry. See, e.g., Davila I, 133 S. Ct. at 2149-50. In this case, we do not have the transcript from Wilson's second Rule 11 hearing, and the cursory statement of the proceedings leaves much to be desired.

When forced by equipment failure to generate the record themselves, the parties submitted a single paragraph describing the hearing. The statement does not indicate whether a proper Rule 11 colloquy took place, let alone whether Wilson voluntarily entered his plea. One of the few specifics it does relate is that Wilson does not remember being informed of the terms of the plea agreement at the hearing. The hearing, as described by the parties, did nothing to combat the effect of the earlier Rule 11 violation, and leaves substantial doubt as to the voluntariness of the ultimate plea. Cf. Braxton, 784 F.3d at 245 ("[T]he plea colloquy in this case only exacerbates the [Rule 11(c)] error.").

The record thus shows that Wilson appeared at his first Rule 11 hearing adamant about refusing the Government's deal and prepared to do so. Instead of allowing him this choice, the judge berated him and stopped the hearing. When Wilson appeared at the second hearing, he changed his mind under unknown conditions and potentially without the benefit of a proper Rule

8

11 colloquy. For these reasons, we conclude that Wilson has demonstrated a reasonable probability that, absent the district court's involvement, he would not have pled guilty.

We thus turn to the last inquiry: whether refusing to notice this plain error would "seriously affect the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 736 (1993) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)) (internal quotation marks omitted).

This court has recognized that "failure to notice [] [a] clear Rule 11 error would almost inevitably seriously affect the fairness and integrity of judicial proceedings." Bradley, 455 F.3d at 463. This is unsurprising, "given the critical interests served by the prohibition [on judicial involvement in plea negotiations]," including "preserving the judge's impartiality throughout the proceedings and preventing the public from gaining the misleading impression that a judge is anything less than a neutral arbiter." Id. (internal quotation marks omitted). Indeed, we have found no cases where a Rule 11(c) violation that affected substantial rights did not also affect the fairness of judicial proceedings. The instant case does not present an exception to the "general rule," Braxton, 784 F.3d at 244. Accordingly, we vacate the judgment and remand the case for further proceedings.

As is our usual practice, we remand the case for assignment to a different district judge.  See id. at 247; Bradley, 455 F.3d at 465.  We do not doubt that the original judge would preside fairly and impartially over this case.  However, "[r]egardless of the judge's objectivity, it is the defendant's perception of the judge that will determine whether the defendant will feel coerced to enter a plea."  Bradley, 455 F.3d at 465.

AFFIRMED IN PART AND VACATED AND REMANDED