**UNITED STATES of America, Plaintiff,**

v.

**Brent CROXFORD, Defendant.**

**No. 2:02–CR–00302–PGC.**

United States District Court, D. Utah, Central Division.

July 12, 2004.

---

Lynn C. Donaldson, David V. Finlayson, Salt Lake City, UT, for Defendant.

Michele M. Christiansen, Trina A. Higgins, Robert L. Steele, Office of the Guardian Ad Litem, Salt Lake City, UT, for Plaintiff.

**MEMORANDUM OPINION AND ORDER CONCLUDING, AFTER ADDITIONAL BRIEFING FROM THE GOVERNMENT, THAT THE SENTENCING GUIDELINES ARE UNCONSTITUTIONAL IN THIS CASE**

CASSELL, District Judge.

On June 29, 2004, this court issued its memorandum opinion on sentencing in this case.[1] The court concluded, in the wake of the Supreme Court's recent decision in *Blakely v. Washington*,[2] that the Sixth Amendment's right to trial by jury

---

1. 2004 WL 1462111 (D.Utah June 29, 2004) (as amended July 7, 2004).

2. —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

prevented the Federal Sentencing Guidelines from determining defendant Croxford's sentence. This court reasoned that the holding of *Blakely* forbids judicial fact-finding under the Guidelines leading to an enhancement of a defendant's sentence above what would have resulted from the facts charged in the indictment or admitted as part of any plea. Because application of the Guidelines in Croxford's case would require such unconstitutional judicial fact-finding, the court found that the Guidelines could not control his sentence. Accordingly, the court sentenced Croxford without giving the Guidelines binding effect and imposed a sentence of 148 months.

Because it was clear that *Blakely* would impact federal sentencings, the government moved to continue the sentencing until it could receive guidance from the Department of Justice in Washington, D.C. However, the sentencing scheduled for June 29, 2004, involved the testimony of an eleven-year-old victim, and her guardian ad litem strongly opposed continuing the sentencing hearing. Persuaded that justice required the court to proceed immediately to sentencing, the court denied the motion to continue but held the judgment in abeyance to give the United States Attorney's Office an opportunity to more fully develop its position in this case in consultation with appropriate officials in the Department of Justice in Washington, D.C. and to file supplemental briefing on the constitutionality of the Guidelines.

The Department of Justice has now formulated its position on the constitutionality of the Guidelines under *Blakely*. In a form pleading filed in this case (and apparently to be filed throughout the country), the Department argues that the Guidelines remain constitutional and should continue to be applied by federal district courts.[3]

The Department advances essentially two arguments in support of this position: first, that the Supreme Court has previously upheld the constitutionality of the Guidelines and, until the Court holds otherwise, lower federal courts are bound by those decisions and, second, that the Federal Sentencing Guidelines operate differently from the unconstitutional guidelines used in Washington State that were at issue in *Blakely*.

Neither of the Department's arguments are persuasive. While the Supreme Court has rejected other constitutional challenges to the Federal Sentencing Guidelines, it has never considered how the Sixth Amendment's right to a jury trial applies to the Guidelines. The most recent Supreme Court decision on the Sixth Amendment is *Blakely*. Given that defendant Croxford has raised a Sixth Amendment challenge here, this court is obligated to fairly apply *Blakely* in ruling on that challenge. Moreover, the Federal Sentencing Guidelines are, for constitutional purposes, indistinguishable from the Washington guidelines found infirm in *Blakely*. Indeed, if anything, the federal Guidelines appear more vulnerable to constitutional attack than the Washington guidelines the Court invalidated.

As a result, this court rejects the Department's arguments and reaffirms its earlier ruling that the Guidelines cannot control Croxford's sentence. Because this issue will recur in many cases, it may be useful to set forth the reasons underlying this legal conclusion in some detail.

## I. The Supreme Court has not Ruled on the Sixth Amendment's Application to Guidelines.

The Department's brief defending the Guidelines begins with the unremarkable

---

3. Motion for Reconsideration of Amended Memorandum Opinion and Order Finding Application of the Sentencing Guidelines Un-

constitutional, (Dkt. # 100–1) (July 9, 2004) (hereinafter "U.S.'s Motion for Reconsideration").

proposition that this court is bound to follow Supreme Court precedent. However, the Department fails in its attempt to argue that the Supreme Court has already ruled on the Sixth Amendment issue presented·in this case. The Supreme Court has simply not reached that question.

To be sure, the Supreme Court has *reserved* the issue of whether the Sixth Amendment right to a jury trial has implications for the Guidelines. Thus, in the fountainhead case of *Apprendi v. New Jersey*,[4] the Court specifically stated ·that "[t]he Guidelines are ... not before the Court" and "express[ed] no view on the subject beyond what this Court has already held."[5] Echoing this language, in *Blakely*, the Court also specifically said "[t]he Federal Guidelines are not before us, and we express no opinion on them."[6] Because the Supreme Court itself has said that it has not reached this issue, how can this court be bound to follow a precedent which has never been set?

Still, the Department maintains that "Supreme Court rulings. have consistently upheld the Guidelines against constitutional attack."[7] Again, this claim is true—as far as it goes. But Supreme Court rulings have never considered the constitutional attack at issue here: whether the Sixth Amendment right to a jury trial invalidates judicial factfinding under the Guidelines.

A brief review of the Supreme Court decisions cited by the Department demonstrates that the Sixth Amendment argument has not been ruled on by the Court. The earliest case the Department cites is the 1989 decision, *Mistretta v. United States*.[8] Mistretta argued that the creation of a Sentencing Commission within the judicial branch of government to promulgate sentencing guidelines was an unconstitutional delegation of legislative authority. The Court rejected the argument. The Court held that the constitutionally required separation of powers does not bar Congress from "calling upon the accumulated wisdom and experience of the Judicial Branch" to serve on the commission, nor does the Constitution "prohibit Congress from delegating to an expert body located within the Judicial Branch the intricate task of formulating sentencing guidelines consistent with ... significant statutory direction."[9] In short, *Mistretta* is wholly irrelevant to the Sixth Amendment issue before this court.

· The Department next cites *Stinson v. United States*.[10] There, a lower court had held that commentary to the Guidelines, though persuasive, is of only "limited authority" and not "binding" on the federal courts.[11] The Supreme Court granted certiorari and reversed, holding that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."[12] Again, the court did not address the issue of whether a Sixth Amendment right to a jury trial has implications for the Guidelines.

4. 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

5. *Id.* at 497 n. 21, 120 S.Ct. 2348.

6. *Blakely*, 124 S.Ct. at 2538 n. 9.

7. U.S.'s Motion for Reconsideration at 2.

8. *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

9. *Id.* at 412, 109 S.Ct. 647.

10. 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).

11. *Id.* at 39, 113 S.Ct. 1913.

12. *Id.* at 38, 113 S.Ct. 1913.

The next case cited by the Department is *Witte v. United States.*[13] In *Witte* the defendant moved to dismiss an indictment on drug charges arguing that since the drug quantities had previously been included in the relevant conduct calculation for a prior conspiracy charge, the Double Jeopardy Clause prohibited him from being tried for the crime. The Supreme Court rejected his argument, holding that "consideration of relevant conduct in determining a defendant's sentence within the legislatively authorized punishment range does not constitute punishment for that conduct" and "does not violate the Double Jeopardy Clause's prohibition against the imposition of multiple punishments for the same offense."[14] Once again, this case neither discusses nor decides the Sixth Amendment jury trial issue presented here.

The Department next cites *Edwards v. United States.*[15] While this is the best case for the government, it also clearly did not decide the Sixth Amendment question. Edwards was convicted for conspiracy to distribute cocaine and cocaine base (crack) after a jury trial. The jury instructions stated, "the government must prove that the conspiracy ... involved measurable amounts of cocaine *or* cocaine base."[16] The judge then imposed sentence based on his finding that Edwards "conduct had involved *both* cocaine *and* crack."[17] On appeal, Edwards argued that because the jury instruction included the word "or" the judge must assume the conspiracy was only dealing with cocaine and not crack.

The Supreme Court rejected this contention in a five-page, unanimous decision. The Court explained that "the judge [is] authorized to determine for sentencing purposes whether crack, as well as cocaine, was involved in the offense-related activities."[18] The Court further held that "regardless of the jury's actual, or assumed, beliefs about the conspiracy, the Guidelines nonetheless require the judge to determine whether the 'controlled substances' at issue—and how much of those substances—consisted of cocaine, crack, or both."[19] In this particular case, however, the Court found that regardless of how the judge proceeded, it would not have made a difference; the petitioners had not explained "how their 'jury-found-only-cocaine' assumption could have made a difference to the judge's own findings, nor did they explain how this assumption (given the judge's findings) should lead to greater leniency."[20]

This holding is not about the breadth of the Sixth Amendment jury trial right. As the Seventh Circuit recently explained in finding that *Blakely* rendered the Guidelines unconstitutional, "[t]he opinion in *Edwards* does not mention the Sixth Amendment or the constitutional right to a jury trial."[21] The Seventh Circuit further observed that the Supreme Court had granted certiorari in *Edwards* to resolve a conflict among the Circuits about whether the Guidelines require the sentencing judge or jury to determine the amount and types of drugs in a drug conspiracy.[22] Finally, as the Seventh Circuit explained, "the most

---

13. 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995).

14. *Id.* at 406, 115 S.Ct. 2199.

15. 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998).

16. *Id.* at 513, 118 S.Ct. 1475 (emphasis added by Court).

17. *Id.*

18. *Id.*

19. *Id.* at 514, 118 S.Ct. 1475

20. *Id.* at 516, 118 S.Ct. 1475

21. *United States v. Booker,* 375 F.3d 508, 513, 2004 WL 1535858, *5 (7th Cir.2004).

22. *Id.; see also Edwards,* 523 U.S. at 513, 118 S.Ct. 1475 (noting a "potential conflict" in

that can be dug out of [the petitioners'] briefs, so far as bears on that issue, is that they were urging a statutory interpretation that would *avoid* a Sixth Amendment issue."[23] This court agrees with the Seventh Circuit that *Edwards* does not bear on the Sixth Amendment issue. Indeed, if there were any debate about the narrowness of the unanimous decision in *Edwards*, it is conclusively resolved by the opinion's last sentence. After explaining that the petitioners had failed to raise various challenges in the district court and that the judge could have reached the same conclusion regardless of how the jury's verdict were interpreted, the Supreme Court concluded: "For these reasons, we need not, and we do not, consider the merits of petitioners' statutory and constitutional claims."[24]

The final case cited by the Department is *United States v. Watts.*[25] A jury found Watts guilty of possessing cocaine with the intent to distribute, but acquitted him on charges relating to a firearm. The Court of Appeals concluded that the Double Jeopardy Clause barred the trial court from relying on facts relating to the firearm in determining Watts' sentence under the Guidelines. The Supreme Court reversed, holding "that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance

of the evidence."[26] This case says nothing about Sixth Amendment issues.

In sum, none of the Supreme Court cases on the Federal Sentencing Guidelines even discuss—much less decide—the Sixth Amendment jury trial issue presented here. As a result, *Blakely's* impact on the Guidelines must be decided on a clean slate, an obvious fact that *Blakely's* dissenters were quick to raise. The lead dissent, authored by Justice O'Connor warned that "[t]oday's decision casts constitutional doubt over [Guidelines enacted by other States and the Federal Government] and, in so doing, threatens an untold number of criminal judgments."[27] Justice Breyer reached the same conclusion. The Court's opinion, Justice Breyer concluded, would "at a minimum ... set[ ] aside numerous state efforts in that direction. Perhaps the Court will distinguish the Federal Sentencing Guidelines, but I am uncertain how."[28]

■ The Department raises one last argument to block this court from reaching any conclusion about *Blakely's* impact on the Guidelines: that the Tenth Circuit has ruled that the Guidelines do not violate *Apprendi* and that, therefore, this lower court must follow the Circuit and sustain the Guidelines. It is true that the Tenth Circuit (and all others to reach the issue) has rejected claims that *Apprendi* invalidated the Guidelines.[29] These rulings,

---

the Circuits in light of *United States v. Edwards*, 105 F.3d 1179 (7th Cir.1997); *United States v. Bounds*, 985 F.2d 188, 194–95 (5th Cir.1993); *United States v. Pace*, 981 F.2d 1123 (10th Cir.1992); *United States v. Owens*, 904 F.2d 411 (8th Cir.1990)).

**23.** *Booker*, 375 F.3d at 513, 2004 WL 1535858 at *5

**24.** *Edwards*, 523 U.S. at 516, 118 S.Ct. 1475.

**25.** 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997).

**26.** *Id.* at 157, 117 S.Ct. 633.

**27.** *Blakely*, 124 S.Ct. at 2549 (O'Connor, J., dissenting).

**28.** *Id.*, 124 S.Ct. at 2561 (Breyer, J., dissenting).

**29.** *See United States v. Mendez–Zamora*, 296 F.3d 1013, 1020 (10th Cir.2002); *accord United States v. Casas*, 356 F.3d 104, 128 (1st Cir.2004); *United States v. Luciano*, 311 F.3d 146, 153 (2nd Cir.2002); *United States v. Parmelee*, 319 F.3d 583, 592 (3rd Cir.2003); *United States v. Cannady*, 283 F.3d 641, 649 & n. 7 (4th Cir.2002), *cert. denied*, 537 U.S. 936, 123 S.Ct. 38, 154 L.Ed.2d 238 (2002); *United*

however, all pre-dated *Blakely's* expansive reading of *Apprendi.* Where a Supreme Court holding effectively modifies an earlier ruling of the Circuit, this court is obviously required to follow the commands of the Supreme Court.[30] That is precisely what has happened here. Accordingly, the Court must give effect to *Blakely* in deciding the Sixth Amendment issue that the defendant has raised here.

## II. The Federal Guidelines Suffer From the Same Constitutional Defect as the Washington State Guidelines.

The Department's next argument is an attempt to distinguish the Federal Sentencing Guidelines on the basis that "the Commission-promulgated Federal Guidelines operate differently from Washington State's legislatively enacted guidelines."[31] The Department's argument then develops in two parts. First, the Department maintains that the "federal Guidelines were never intended to operate on the same footing as the statutory maximums."[32] And, second, the Department contends that the fact that the Guidelines were pro-

mulgated by the "constitutionally unique" Sentencing Commission distinguishes the federal system from Washington's guidelines. Neither claim is valid.[33]

### A. The Guidelines Are Equivalent to Statutory Maximums.

The federal guidelines suffer from the same infirmity as the Washington guidelines. Under the Washington scheme offenses were subject categorically to maximum sentences: life maximum for a Class A felony, ten years maximum for a Class B felony, and five years maximum for a Class C felony.[34] Within these categorical maximums, specific crimes were subject to a "presumptive sentencing range."[35] This smaller range was the range of possible sentences absent a judicial finding of "substantial and compelling reasons justifying an exceptional sentence."[36] The Supreme Court determined that the "relevant 'statutory maximum'" was "the maximum [the judge] may impose *without* any additional findings."[37] Absent additional fact-finding, the judge could not sentence above this level, but since the statute did not

States v. Floyd, 343 F.3d 363, 372 (5th Cir. 2003), *cert. denied,* — U.S. ——, 124 S.Ct. 2190, 158 L.Ed.2d 752 (2004); *United States v. Tarwater,* 308 F.3d 494, 517 (6th Cir.2002); *United States v. Merritt,* 361 F.3d 1005, 1015 (7th Cir.2004); *United States v. Banks,* 340 F.3d 683, 684–85 (8th Cir.2003); *United States v. Ochoa,* 311 F.3d 1133, 1134–36 (9th Cir.2002); *United States v. Ortiz,* 318 F.3d 1030, 1039 (11th Cir.2003); *United States v. Pettigrew,* 346 F.3d 1139, 1147 n. 18 (D.C.Cir. 2003).

30. *See, e.g., U.S. v. Brittain,* 41 F.3d 1409, 1415 (10th Cir.1994) (noting "that in some circumstances an intervening Supreme Court decision may allow a panel of this court to determine that a previous circuit court decision is no longer binding"); *United States v. Killion,* 7 F.3d 927, 930 (10th Cir.1993), *cert. denied,* 510 U.S. 1133, 114 S.Ct. 1106, 127 L.Ed.2d 418 (1994) (panels are bound by the precedent of prior panels absent *en banc* re-

consideration or a superseding contrary decision by the Supreme Court).

31. U.S.'s Motion for Reconsideration at 10.

32. *Id.* at 11.

33. *See generally* Nancy J. King & Susan R. Klein, *Beyond* Blakely,—FED. SENTENCING RPRT.—(forthcoming special issue) (draft article available on Professor Berman's helpful website http://sentencing.typepad.com).

34. Wash. Rev.Code § 9A.20.021(1).

35. *See* Wash. Rev.Code § 9.94A.510; *Blakely,* 124 S.Ct. at 2535; *see also id.,* 124 S.Ct. at 2549 (O'Conner, J., dissenting).

36. Wash. Rev.Code § 9.94A.505(2)(b); *Blakely,* 124 S.Ct. at 2535.

37. *Blakely,* 124 S.Ct. at 2537.

require a jury to find these facts, the scheme violated the Sixth Amendment.

The Federal Sentencing Guidelines operate in the same way. Under the Guidelines, some statutes impose a broad maximum, and the Guidelines call for a narrower range within that maximum based on the specific offense. As the Supreme Court has clearly held, "'the Guidelines bind judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases.'"[38] In other words, the Federal Sentencing Guidelines are "guidelines" in name only. As one federal district judge recently complained, "To call our present federal sentencing structure a 'guidelines' system suggests that the district judge still plays a central role. She does not. Other than determining the controlling sentencing factors ..., the district judge's role is purely mechanistic, applying arithmetically the sentencing factors...."[39]

Recognizing these facts in her dissenting opinion in *Blakely*, Justice O'Connor considered—and rejected—the very claim the Department now advances here (and had advanced in *Blakely*). As she explained:

> The structure of the Federal Guidelines likewise does not, as the Government half-heartedly suggests, provide any grounds for distinction.... If anything, the structural differences that do exist make the Federal Guidelines more vulnerable to attack. The provision struck down here provides for an increase in the upper bound of the presumptive sentencing range if the sentencing court finds, "considering the purpose of [the

Act], that there are substantial and compelling reasons justifying an exceptional sentence." Wash. Rev.Code Ann. § 9.94A.120 (2000). The Act elsewhere provides a nonexhaustive list of aggravating factors that satisfy the definition. § 9.94A.390. The Court flatly rejects respondent's argument that such soft constraints, which still allow Washington judges to exercise a substantial amount of discretion, survive *Apprendi*. This suggests that the hard constraints found throughout chapters 2 and 3 of the Federal Sentencing Guidelines, which require an increase in the sentencing range upon specified factual findings, will meet the same fate.[40]

In an effort to avoid these conclusions, Judge Easterbrook has recently described the statutory scheme in *Blakely* in different terms. However, Judge Easterbrook may have misread the Court's definition of a "statutory maximum." Judge Easterbrook characterizes *Blakely* as holding that the relevant statutory maximum for a given crime "is the lowest of all arguably pertinent statutory caps, unless the jury makes the finding that raises the limit."[41] Judge Easterbrook goes on to apply this rule to find that the real statutory maximum at issue in *Blakely* was three years in prison, not ten years. Blakely pled guilty to the crime of second-degree kidnapping, which under Washington law carried a statutory maximum of ten years but "only if the defendant acted with 'deliberate cruelty'—otherwise the maximum is three years."[42] Judge Easterbrook argues, therefore, that Blakely's sentence of 90

**38.** *Stinson*, 508 U.S. at 42, 113 S.Ct. 1913, quoting *Mistretta*, 488 U.S. at 391, 109 S.Ct. 647.

**39.** *United States v. Green*, 2004 WL 1381101, *10 (D.Mass. June 18, 2004).

**40.** *Blakely*, 124 S.Ct. at 2549–50 (some internal citations omitted).

**41.** *Booker*, 375 F.3d at 517, 2004 WL 1535858, *8 (7th Cir.2004) (Easterbrook, J. dissenting).

**42.** *Id.*

months based on a judicial finding of deliberate cruelty exceeded the real statutory maximum of three years.

The court respectfully believes Judge Easterbrook is misreading *Blakely* on a critical point: the Supreme Court treated the relevant statutory maximum at issue in *Blakely* as neither ten years, nor three years, but *53 months*—the maximum Blakely could have been sentenced to under Washington's guidelines without additional judicial factfinding. Thus, the majority opinion emphasizes that Blakely's "90-month sentence exceeded the *53-month standard maximum* by almost 70%."[43]

■ With this point in mind, the Federal Sentencing Guidelines operate exactly as the guidelines at issue in *Blakely* did. Under Washington law, second-degree kidnapping could be punished by up to ten years, but the Washington guidelines prescribed a "'standard range' of 49 to 53 months" in cases such as Blakely's.[44] Likewise, under Federal law, the crime to which Croxford pled guilty could be punished by up to twenty years, but the Guidelines set the punishment, before any enhancements, at 70 to 87 months. The holding of *Blakely* was that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings."[45] Thus, the command of *Blakely* is that the range imposed by the Guidelines—the "standard range" within the broader statutory range—sets the statutory maximum for Sixth Amendment purposes.

## B. The Sentencing Commission Does Not Insulate the Guidelines from Constitutional Attack.

■ The Department's remaining argument is that the fact that the federal Guidelines were promulgated by the Sentencing Commission somehow distinguishes *Blakely*. Once again, Justice O'Connor rejected this very argument in her dissent in *Blakely*, noting that "[t]he fact that the Federal Sentencing Guidelines are promulgated by an administrative agency nominally located in the Judicial Branch is irrelevant to the majority's reasoning."[46]

Justice O'Connor's conclusion is unassailable. To be sure, the Sentencing Commission is something of an odd duck, having been described by the Supreme Court as having "unique composition and responsibilities."[47] Located in the Judicial Branch, its membership comprises at least three judges (recently reduced to no more than three by the PROTECT Act). It is an "independent agency in every relevant sense."[48]

The constitutionally relevant question, however, is what difference it makes that the federal Guidelines are initially promulgated by an independent agency while the Washington guidelines were adopted by a legislature. As noted above, the net effect is the same: both the Sentencing Commission and the Washington legislature produced legally binding sentencing directives. As Judge Posner has explained, the Sentencing Commission "is exercising power delegated to it by Congress, and if a legislature cannot evade what the Supreme

---

43. *Blakely*, 124 S.Ct. at 2539–40; *accord id.*, 124 S.Ct. at 2535 (noting sentence of "90 months—37 months beyond the standard maximum").

44. *Id.*, 124 S.Ct. at 2535.

45. *Id.*, 124 S.Ct. at 2537.

46. *Blakely*, 124 S.Ct. at 2549 (O'Connor, J., dissenting).

47. *Mistretta*, 488 U.S. at 384, 109 S.Ct. 647.

48. *Id.* at 393, 109 S.Ct. 647.

Court deems the commands of the Constitution by a multistage sentencing scheme neither, it seems plain, can regulatory agency." [49] Moreover, it can hardly be constitutionally significant that the federal Guidelines come stamped with the label "approved by the Sentencing Commission" rather than "approved by the legislature." In *Mistretta*, the Court warned against giving dispositive constitutional effect to the "labeling of an activity." [50] In any event, the purported label in this case might be somewhat misleading. Every Commission-promulgated sentencing guideline must be ratified by Congress, which "can revoke or amend any or all of the Guidelines as it sees fit." [51] This is no mere conjectural power, as Congress has invoked its authority to reject guideline amendments promulgated by the Sentencing Commission, and to bypass the Commission altogether and amend the Guidelines directly.[52] For all these reasons, the Sentencing Commission's initial authorship cannot save the Guidelines.

Judge Easterbrook argued to the contrary in his dissent to the Seventh Circuit's decision invalidating the Guidelines. He analogizes the Guidelines to parole guidelines, which would survive constitutional challenge:

> Think of the determinate sentence: zero-to-life with release in the discretion of parole officials. The federal Parole Commission eventually developed a set of release guidelines designed to ensure consistent treatment of offenders. *See*

*United States v. Addonizio*, 442 U.S. 178[, 99 S.Ct. 2235, 60 L.Ed.2d 805] (1979). Parole-release guidelines might say something like: "Hold bank robbers in prison for 10 years; hold armed bank robbers for 20; hold armed bank robbers who discharge their weapons or take hostages for 30; add (or subtract) time from these presumptive numbers to reflect the size of the heist." If my colleagues are right, then such a system violates the sixth amendment. Yet the Justices do not think this a problem, as parole and other forms of executive clemency don't affect the degree of the offense and therefor do no undercut the jury's role. *See Blakely*, 124 S.Ct. at 2557. If these parole regulations are valid, why not the federal Sentencing Guidelines?

The quick answer to Judge Easterbrook's argument is that parole decisions have always been viewed as a constitutionally distinct from sentencing decisions. As the Supreme Court has explained, "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." [53] Thus, if a prisoner has received a valid sentence, what may or may not happen later in the parole process cannot cast doubt on it. In light of these facts, the full panoply of constitutional protections (such as the Sixth Amendment's right to a jury trial) do not apply to parole decisions. Indeed, the Supreme Court has

---

**49.** *Booker*, 375 F.3d at 510, 2004 WL 1535858, *2.

**50.** *Id.* at 392, 109 S.Ct. 647.

**51.** *Id.* at 393–94, 109 S.Ct. 647.

**52.** *See, e.g.*, Congressional rejection of two attempts by the U.S. Sentencing Commission to modify the 100–1 powder to crack cocaine sentencing ratio (text of proposed amendments reprinted at 57 CRIM. L. REP. 2095, 2096

(1995) & 10 Fed. Sent. Rptr. 184 (1998)); PROTECT Act, Pub.L. 108–21, 41(b),(g), and (i), 117 Stat. 668–69, 671–73 (April 30, 2003) (directly amending guidelines regarding child pornography, curbing judicial discretion to depart downward, and changing appellate standard of review of criminal sentences).

**53.** *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 6, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

held that prisoners are entitled little more than a right to be heard and a decision as to why a prisoner has not been granted parole.[54] In light of these holdings, it comes as no surprise to find that *Blakely* describes approvingly fact-finding by a parole board to determine parole [55] while invalidating judicial fact-finding to determine a sentence. As *Blakely* explains, parole determinations "do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." [56]

In sum, the federal Guidelines cannot be distinguished, at least as to any constitutionally significant point, from the invalid Washington guidelines at issue in *Blakely*. The court, therefore, rejects the Department's argument that *Blakely* allows the Guidelines to be constitutionally applied in this case.

One last note: As this opinion was being finalized, the Fifth Circuit released its opinion in *United States v. Pineiro*,[57] concluding that the Guidelines were constitutional—at least until the Supreme Court announced otherwise. *Pineiro* explicitly agreed with this Court that the Supreme Court has never squarely reached the question of the Sixth Amendment's application to the Guidelines.[58] Moreover, the Circuit conceded that "*Blakely* may have weakened the long-embraced distinction between United States Code maxima and Guidelines ranges . . . ." [59] Nonetheless, the Circuit concluded: "We do not believe that the Sentencing Commission can be thought of as having created for each United States Code section a hundred different *Apprendi* 'offenses' . . . ." [60]

The Fifth Circuit certainly has strong prudential reasons for reaching this conclusion. Nonetheless, as a legal matter, this reasoning seems unsound. *Blakely* had no difficulty in thinking that the Washington legislature could be thought of as having created a variety of different *Apprendi* "offenses." This court respectfully believes there is no principled basis for reaching a different conclusion about the federal scheme.

## III. The Court Will Not Reach the Issue of Croxford's Waiver of Jury Trial Rights.

■ One last issue deserves brief discussion. When defendant Croxford pled guilty in this case, he was advised of his rights and signed a waiver of those rights. In particular, he signed a statement in advance of plea that "I know that I have a right to trial by jury" and that he nonetheless wished to plead guilty and waive that right.[61] In the statement Croxford also seemingly agreed to be sentenced under the Guidelines, as he stated, "I know that the sentencing procedures in this case, and the ultimate sentence, will be determined pursuant to the Sentencing Reform Act of 1984 . . . ." [62]

54. *Id.* at 15, 99 S.Ct. 2100.

55. *See Blakely*, 124 S.Ct. at 2539–41.

56. *Id.*

57. 377 F.3d 464, 2004 WL 1543170 (5th Cir. 2004).

58. *Id.*, 377 F.3d at ——, 2004 WL 1543170, at *8 (the Supreme Court opinions "do not discuss the Sixth Amendment right to jury trial, and we do not pretend otherwise.").

59. *Id.*

60. *Id.*, 124 S.Ct. at 2542, 2004 WL 1402697, at *9.

61. Statement in Advance of Plea, ¶ 6 (Dkt. # 88–1).

62. *Id.*, ¶ 3.

It is arguable that these statements in his plea agreement waived any right to raise a *Blakely* challenge. The government, however, has not raised such an argument and the court has invested considerable time in this matter on the assumption that Croxford has not waived his right. Accordingly, the court will not reach the issue of whether Croxford has waived his rights. The court directs the government to brief this issue in the next sentencing where it is relevant.

## CONCLUSION

As announced in its previous decision in this case, the court again finds that the sentencing guidelines cannot be constitutionally applied to govern defendant Croxford's sentencing. As a result of this holding reaffirming the court's ruling in favor of the defendant on the constitutional question, no further briefing from the defendant is necessary. The court had previously advised defense counsel of its intent to proceed in this fashion by letter. Accordingly, judgment is entered in this case.

The court therefore imposes a sentence of 148 months imprisonment, along with other matters specified in the judgment. The judgment in this case will be entered on this date.

SO ORDERED.