UNITED STATES of America

v.

Milton Lloyd JARRETT

No. CIV.A. 04–699.

No. CR. 02–176–001.

United States District Court,
W.D. Pennsylvania.

Sept. 1, 2004.

As Amended Sept. 2, 2004.

811

Bonnie Schlueter, Assistant U.S. Atty, Pittsburgh, PA, for Plaintiff.

Milton Lloyd Jarrett, Pro Se, Lisbon, OH, for Defendant.

## OPINION

DIAMOND, District Judge.

Presently before the court is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Document No. 38) filed by Milton Lloyd Jarrett ("petitioner") as well as a supplemental petition (Document No. 43) to amend his § 2255 motion in order to add a claim pursuant to *Blakely v. Washington*, — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). For the following reasons, petitioner's motions will be denied.

On August 29, 2002, a grand jury returned a one-count indictment against petitioner charging him with conspiracy to import into the United States from Jamaica 5 kilograms or more of cocaine from May 2000 to August 26, 2001, in violation of 21 U.S.C. § 963.

On April 23, 2003, pursuant to a written plea agreement, petitioner entered a plea of guilty to the one-count indictment. Under the terms of the plea agreement, defendant agreed to plead guilty to the indictment and the government agreed to recommend a three-level decrease in petitioner's offense level for acceptance of responsibility.

The plea agreement contained numerous stipulations, two of which are relevant to the resolution of petitioner's § 2255 motions. First, the parties stipulated that "the quantity of cocaine attributable to [petitioner] in this case is at least three and one-half (3 ½) but less than five (5) kilograms" and that the stipulation "[was] a complete and accurate account of the offense conduct, including all relevant conduct." Second, the parties stipulated that "the adjusted base offense level should be raised by a total of three (3) levels under the following Section of the Guidelines: 3B1.1 (Aggravating Role)."

On July 10, 2003, this court filed its tentative findings and rulings by which it calculated petitioner's total offense level under the United States Sentencing Guidelines (" Guidelines" or "USSG") as follows: base offense level of 30 under § 2D1.1(a)(3) and (c)(5), based on the parties' stipulation as to drug quantity; three level increase under § 3B1.1(b), based on petitioner's stipulated aggravated role as a manager or supervisor (but not an organizer or leader); a three level decrease under § 3E1.1(a) and (b)(2), based upon petitioner's acceptance of responsibility; resulting in a total offense level of 30. Based on petitioner's criminal history category of I and a total offense level of 30, the court found petitioner's guideline sentencing range to be 97 to 121 months.

On July 23, 2003, petitioner appeared for sentencing. Petitioner and his counsel were asked if they had had an opportunity to review the presentence report and the court's tentative findings and rulings and whether they had any objections thereto. Neither petitioner nor his counsel voiced any substantive objections to any of the court's tentative findings, and they were adopted by the court as its final findings and rulings. Petitioner was sentenced to 97 months, the low end of the applicable sentencing guideline range, and advised of his right to appeal the sentence. Petitioner did not appeal.

Petitioner filed his initial § 2255 motion on May 10, 2004, seeking relief on three grounds: (1) the sentence imposed by he court violated petitioner's Fifth Amendment due process rights because the facts were insufficient to support the court's finding that petitioner was a manager or supervisor, which resulted in a three-level increase to petitioner's base offense level; (2) the sentence was "unconstitutionally calculated" in that it was based upon quantities of drugs that improperly were attributed to petitioner after he "quit" the conspiracy; and, (3) petitioner was denied the effective assistance of counsel in entering a guilty plea in which he stipulated to a role

enhancement where defense counsel "had not familiarized himself sufficiently with the evidence ... nor sought adequate discovery."

On August 6, 2004, petitioner filed a supplemental petition to amend his § 2255 motion to add an additional ground for relief in light of *Blakely*. Specifically, petitioner contends in this regard that his sentence was imposed in violation of his Sixth Amendment right to trial by jury because it was enhanced pursuant to U.S.S.G. § 3B1.1(b) by the court's factual finding by a preponderance of the evidence that petitioner was a manager or supervisor of the conspiracy.

■ Upon due consideration of petitioner's original § 2255 motion and supplemental petition and the government's responses thereto, the court finds that petitioner is not entitled to § 2255 relief under any of his asserted grounds.[1]

Initially the court finds that the three claims for relief asserted by petitioner in his initial § 2255 motion are meritless and warrant little discussion. As to plaintiff's first two claims, petitioner is procedurally barred from asserting those claims on two distinct grounds.

1. Pursuant to Rule 8(a) of the Rules Governing § 2255 Proceedings, the court finds that no evidentiary hearing on petitioner's motion is required. Rule 8 provides:

> If the motion has not been dismissed at a previous stage in the proceeding, the judge, after the answer is filed and any transcripts or records of prior court actions in the matter are in his possession, shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice dictates.

> Where the record affirmatively indicates that a movant's claim for relief is without merit, the claim may be decided on the record

without a hearing. *See Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir.1985); *Page v. United States*, 462 F.2d 932, 933 (3d Cir.1972). Thus, if the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted in support of a § 2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, it is not an abuse of discretion to elect not to conduct an evidentiary hearing. *See Nicholas*, 759 F.2d at 1075. In this case, the court finds, for the reasons set forth in this opinion, that the record affirmatively establishes as a matter of law that petitioner's claims for relief are meritless and therefore no hearing is required.

■ First, because petitioner failed to raise those sentencing issues by filing a direct appeal, he is precluded from pursuing them here absent a showing of cause and prejudice. *See United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Essig,* 10 F.3d 968, 979 (3d Cir.1993) (holding that *Frady 's* cause and prejudice standard applies to § 2255 proceedings where petitioner seeks relief for alleged sentencing errors that he has not directly appealed). Here, petitioner has not established cause or prejudice for his failure to raise his first two claims in a direct appeal.

Moreover, petitioner's first two claims for relief are precluded by the long-established rule that "a voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked." *Mabry v. Johnson,* 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); *Lesko v. Lehman,* 925 F.2d 1527, 1537 (3d Cir. 1991). "Accordingly, when the judgment of conviction becomes final and the offender seeks to reopen the proceedings, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989).

■ Here, petitioner stipulated in his plea agreement to both the quantity of drugs attributable to him and that he would be subject to the § 3B1.1 enhancement for his role in the offense. He therefore is precluded from challenging those findings in a § 2255 motion absent a showing that his plea was involuntary and/or uncounseled. Petitioner can show neither.

A finding of involuntariness effectively is foreclosed by petitioner's admissions at the change of plea hearing during the colloquy with the court, and petitioner has raised no new meritorious allegations that his plea otherwise was coerced. Nor has petitioner set forth any allegations that his guilty plea was uncounseled except as alleged in his third claim for relief, which the court likewise finds to be without merit.[2]

■ Petitioner's third claim for relief asserts that he received ineffective assistance of counsel in violation of his Sixth Amendment right to counsel. In order to prevail on his claim that his counsel rendered constitutionally ineffective assistance, petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that the deficient performance actually prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the context of an ineffective assistance of counsel claim relating to guilty pleas, the prejudice prong of the *Strickland* test can be met by a showing that, but for counsel's errors, petitioner would have proceeded to trial instead of pleading guilty. *Hill v. Lockhart,* 474 U.S. 52, 56–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *United States v. Nahodil,* 36 F.3d 323, 326 (3d Cir.1994).

■ Here, petitioner can show neither ineffective assistance nor prejudice. Petitioner's counsel negotiated a favorable plea agreement whereby petitioner's guideline sentencing range was calculated to be 97 to 121 months. Petitioner was sentenced to the low end of that range. Had petitioner proceeded to trial and been convicted of conspiracy to import 5 kilograms or

---

**2.** Even if petitioner's first two claims for relief were not procedurally barred, he would not be entitled to relief on either on the merits since the evidence before the court at the time of sentencing, *see* Search Warrant Affidavit, Ex. 2, Defendant's List of Exhibits; Transcript of Plea Hearing, pp. 17–19, Defendant's Ex. 18, as well as the record as it stands now is more than sufficient to support the court's findings as to drug quantity and petitioner's role in the offense. *See also* our discussion and analysis of *Blakely, supra.*

more of cocaine as charged in the indictment, he would have faced a statutory *minimum* sentence of 10 years. 21 U.S.C. §§ 952(a); 960(a)(1)(B)(ii); 963.

Thus, defense counsel negotiated a plea with the government by which petitioner was spared at least 23 additional months of imprisonment and possibly more. It is true that as part of the give and take of negotiations, defense counsel conceded to a three-level increase for petitioner's role in the offense, but the record indicates that petitioner knowingly and voluntarily agreed to this. Moreover, by accepting the plea agreement the three-level enhancement was offset by a three-level decrease for acceptance of responsibility. In addition, as noted above, petitioner avoided the very real risk of trial and a mandatory minimum sentence of not less than 10 years upon conviction. Thus the court finds that petitioner's contention that defense counsel was ineffective in negotiating a guilty plea, or that somehow petitioner was prejudiced thereby, is wholly without merit.

Accordingly, petitioner's original § 2255 motion will be denied.

Petitioner's supplemental § 2255 motion raises the claim set forth at pages 3–4, *supra*, pursuant to the recent decision of the United States Supreme Court in *Blakely v. Washington, supra.* Petitioner's claim assumes that *Blakely* will be applied to the United States Sentencing Guidelines, that they will be found to be unconstitutional, and that holding will be made retroactive to cases on collateral review. Because the court disagrees in significant respects with those assumptions, petitioner's supplemental petition also will be denied.

In *Blakely,* the United States Supreme Court vacated a sentence imposed pursuant to the Sentencing Reform Act (SRA) of the state of Washington. The Court held that the sentence violated the defendant's Sixth Amendment right to trial by jury because, solely on the basis of the sentencing judge's factual finding that defendant acted with deliberate cruelty in committing the underlying offense of second-degree kidnaping to which he had pleaded guilty, the sentence had been enhanced by more than 3 years beyond the 49–53 month "standard range" sentence established by applying the SRA to that offense.

Although Justice Scalia, writing for the majority, specifically noted that the majority was not expressing an opinion on the United States Sentencing Guidelines and that the majority did not view the issue before the Court as being whether determinate sentencing schemes (such as the SRA and the USSG) are constitutional, but only as to how such schemes may be *implemented* in a way that respects the Sixth Amendment, *Blakely* nevertheless has raised serious questions as to the continued viability of the Guidelines. In fact a growing number of federal courts, both at the district and appeals court levels, have declared the USSG to be unconstitutional in light of *Blakely*.[3]

---

3. *See, e.g., United States v. Ameline,* 376 F.3d 967 (9th Cir.2004) (*Blakely* does not render USSG facially unconstitutional but does require severance of procedural aspects of applying USSG); *United States v. Booker,* 375 F.3d 508 (7th Cir.2004), *cert. granted,* 2004 WL 1713654, —— U.S. ——, 125 S.Ct. 11, —— L.Ed.2d —— (2004); *United States v. Croxford,* 324 F.Supp.2d 1255 (D.Utah 2004); *United States v. Shamblin,* 323 F.Supp.2d 757 (S.D.W.Va.2004). *But see, United States v. Koch,* 383 F.3d 436, 2004 Fed.App. 0284P, 2004 WL 1899930 (6th Cir. Aug. 26, 2004) (*Blakely* does *not* require invalidation of USSG); *United States v. Mincey,* 380 F.3d 102 (2d Cir.2004) (absent Supreme Court ruling to contrary, *Blakely* does not require every enhancement under USSG be pleaded and proved beyond reasonable doubt); *United States v. Hammoud,* 378 F.3d 426 (4th Cir. 2004) (instructing district courts in circuit to continue sentencing in accordance with USSG but also to announce a sentence in

The court has reviewed the *Blakely* decision and its predecessors in the *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) line of cases,[4] along with opinions from courts which have ruled on the constitutionality of the USSG after *Blakely*, including those set forth in footnote 3, *supra*. The court also has reviewed the Guidelines themselves and the procedures established therein for arriving at the appropriate offense level and sentencing range in a particular case. As a result, it is the opinion of this court that the Guidelines remain constitutional post-*Blakely* and that, at most, *Blakely* impacts only the application of upward departures under them.

In *Apprendi*, the Court articulated the now familiar rule that: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. In *Blakely*, the Court extended that rule by holding in effect that the "statutory maximum" for *Apprendi* purposes includes not only the traditional statutory maximum, i.e., the maximum sentence set forth in the statute which creates and defines the offense of conviction, but also includes, and is limited by, the "maximum" penalty established for an offense under any applicable formalized determinate sentencing scheme, such as the state of Washington SRA and, possibly, the USSG.

Applying that extended rule, the Court in *Blakely* held that the upper end of the 49–53 month "standard range" sentence established under the Washington SRA for the crime of second-degree kidnaping (a class B felony under Washington law) involving domestic violence and use of a firearm, to which the defendant had pleaded guilty, constituted the "statutory maximum" for *Apprendi* purposes, rather than the 10–year maximum set forth in § 9A.20.021(a)(b) of the Washington Rev. Code Ann. for class B felonies. If defendant had been sentenced within the 49–53 months range, there would have been no Sixth Amendment issue. Where the sentencing court ran into trouble, however, was in departing upwardly from the 53–month maximum by finding by a preponderance of the evidence that in committing the kidnaping crime defendant acted with deliberate cruelty, a finding which enabled the court to impose an "exceptional" sentence under the SRA by departing upwardly and increasing defendant's sentence to 90 months. It was this judicial factfinding of deliberate cruelty (similar, we note, to the racial motivation factfinding under the New Jersey indeterminate sentencing system that *Apprendi* condemned) that authorized the court to increase the punishment beyond the standard range; i.e., beyond the "statutory maximum" of 49–53 months established under the SRA, which the Court in *Blakely* held violated the defendant's Sixth Amendment right.

accordance with 18 U.S.C. § 3553(a) treating USSG as advisory only); *United States v. Pineiro*, 377 F.3d 464 (5th Cir.2004) (USSG remain constitutional post-*Blakely* ). In addition to granting certiorari in *Booker, supra*, the United States Supreme Court also has granted certiorari in *Fanfan v. U.S.*, 2004 WL 1723114 (D.Me. June 28, 2004) (finding that application of USSG enhancements unconsti-

tutional). Oral argument in both cases is scheduled for October 4, 2004. *See* 2004 WL 1713654, —— U.S. ——, 125 S.Ct. 11, —— L.Ed.2d —— (2004) and 2004 WL 1713655 (Aug. 2, 2004).

4. *See Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

However, *Blakely* does not, as *Apprendi* did not, condemn all judicial factfinding in sentencing as violative of a defendant's Sixth Amendment rights. *Blakely* only condemns, as did *Apprendi*, that judicial factfinding which authorizes the court to impose a sentence beyond the "statutory maximum" established for the crime of which the defendant was found guilty by a jury or convicted as a result of his plea of guilty. Under *Apprendi* this "statutory maximum" was the traditional and familiar maximum sentence found in the statute which created and defined the criminal offense of conviction. In *Blakely* that "statutory maximum" was extended to include the high end of the standard sentencing range arrived at by applying the determinate sentencing statute of the state of Washington.

Thus, *Blakely* essentially did nothing more than to recognize an additional source for determining the statutory maximum; i.e., the upper end of the sentencing ranges created by the application of determinate sentencing regimes. *Blakely* then held, consistent with *Apprendi*, that this maximum could not be exceeded constitutionally based on facts found by a judge beyond those subsumed in the applicable guilty plea or jury verdict.

While the *Blakely* holding most likely will embrace the Guidelines, that will not end the matter. For a determination still must be made as to just what that "maximum sentence" is in each particular instance under the Guidelines which cannot be exceeded based on judicial factfindings. The Court in *Blakely*, of course, did not have the Guidelines before it, so it had no need to define that "statutory maximum" under the Guidelines. The *Blakely* Court accepted for its purposes the upper end of the "standard range" under the SRA as that maximum. The Court had no need to discuss or critically to evaluate the methodology employed under the SRA in arriving at that "standard range," and it did not.

Thus far, several of the courts that have struck down the Guidelines in light of *Blakely* appear to have proceeded on the premise that the relevant "statutory maximum" sentence under the USSG post-*Blakely* will be the high end of the sentencing range arrived at by utilizing as the *final offense* level the *base offense level* set forth in the Guidelines for each particular offense without any modification thereof based on judicial factfinding. The reasoning being that under the *Blakely* ruling the judicial factfinding prescribed by the Guidelines as an essential component of the process of adjusting the base offense level and arriving at a final offense level and ultimately the sentencing range constitutes *unconstitutional* judicial factfinding in violation of the Sixth Amendment right to a jury trial; with it the Guidelines are unconstitutional, without it they will not perform as intended. *See, e.g., Croxford,* 324 F.Supp.2d at 1256–57; *Shamblin,* 323 F.Supp.2d at 766; *Fanfan v. United States,* at 2004 WL 1723114, *1–2.

In addition to statements in the dissents of Justices O'Connor and Breyer, the operative language of the majority in *Blakely* upon which that premise most likely is based is found at pages 2537–38 of the opinion where the Court states:

In this case, petitioner was sentenced to more than three years above the 53–month statutory maximum of the standard range because he had acted with "deliberate cruelty." The facts supporting that finding were neither admitted by petitioner nor found by a jury. The State nevertheless contends that there was no *Apprendi* violation because the relevant "statutory maximum" is not 53 months, but the 10–year maximum for class B felonies in § 9A.20.021(1)(b). It observes that no exceptional sentence

may exceed that limit. See § 9.94A.420. Our precedents make clear, however, that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. See *Ring, supra,* at 602 ("the maximum he would receive if punished according to the facts reflected in the jury verdict alone" (quoting *Apprendi, supra,* at 483, 120 S.Ct. 2348)); *Harris v. United States,* 536 U.S. 545, 563, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion) (same); cf. *Apprendi, supra,* at 488, 120 S.Ct. 2348 (facts admitted by the defendant). *In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.* When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," Bishop, *supra,* § 87, at 55, and the judge exceeds his proper authority.

The judge in this case could not have imposed the exceptional 90–month sentence solely on the basis of the facts admitted in the guilty plea. Those facts alone were insufficient because, as the Washington Supreme Court has explained, *"[a] reason offered to justify an exceptional sentence can be considered only if it takes into account factors other than those which are used in computing the standard range sentence for the offense."* *Gore,* 143 Wash.2d, at 315–316, 21 P.3d at 277, which in this case included the elements of second-degree kidnaping and the use of a firearm, see §§ 9.94A.320, 9.94A310(3)(b). Had the judge imposed the 90–month sentence solely on the basis of the plea, he would have been reversed. See § 9.94A.210(4). The "maximum sentence" is no more 10 years here than it was 20 years in *Apprendi* (because that is what the judge could have imposed upon finding a hate crime) or death in *Ring* (because that is what the judge could have imposed upon finding an aggravator).

*Blakely,* —— U.S. at ——–——, 124 S.Ct. at 2537–38 (emphasis added).

It is important to bear in mind, however, that when the Court stated in *Blakely* that the "relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding *additional* facts, but the maximum he may impose *without any additional findings* ", *id.* (emphasis added), that the Court was referring to the *Blakely* matter before it and what this court respectfully believes the majority in *Blakely* was saying was simply in effect that once the SRA had been applied and a standard range sentence was established that became a new "statutory maximum" with all the force and effect of the traditional statutory maximum and it was this "new" statutory maximum, since it was lower than the traditional maximum, which could not be exceeded by facts found by a judge and not a jury.

■ The Court was not condemning *all* judicial factfinding, only the *additional* factfinding that was necessary to authorize a sentence above or in excess of the "statutory maximum", which in *Blakely* was the maximum which had been established under the SRA for the class of the crime of conviction. In *Apprendi,* this was the "traditional" statutory maximum established by the statute which created and defined the crime of conviction, because New Jersey had no determinate sentencing law. And, for the reasons we set forth below, this court believes, that under the Guidelines this will be the high end of the sentence range arrived at *after* applying the Guidelines to the crime of conviction. This requires the court to examine the

Guidelines and to determine how one arrives at the final sentence range under them. If the prescribed process requires judicial factfinding, and it surely does, that should not offend *Blakely* or the Sixth Amendment, because *until the Guidelines have been fully applied and a sentencing range reached under them* we have *only* the traditional statutory maximum sentence established by the statute which created the offense of conviction as the maximum which cannot be exceeded by judicial factfinding. In other words, the *Apprendi, Harris, Ring* and like principles would apply. In *Blakely* we had as a given the 49–53 month "standard range" under the SRA. If any judicial factfinding was utilized in arriving at that "standard range" it was not challenged in *Blakely*. Until the Guidelines process has been completed and a final sentencing range established under them, there is no prohibition, other than that set forth in *Apprendi* and related cases to the use of judicial factfinding, because until the Guidelines have been so applied there simply *is no other statutory maximum that is applicable*. Once the Guidelines calculation *has been completed* and a final sentencing range is established under them, then under the *Blakely* holding another *statutory maximum* has been established which *then* may not be exceeded by judicial factfinding, *but not until then*.

▮ Viewing the Guidelines as a "statute" for *Blakely* purposes,[5] and construing them in light of the well-established canons of statutory construction that the plain and unambiguous language of a statute affords the best recourse for its proper interpretation, *United States v. Swan*, 275 F.3d 272, 279 (3d Cir.2002), and that statutes are presumed constitutional and every reasonable construction of a

statute must be resorted to in order to save it from unconstitutionality, *United States v. Whited*, 311 F.3d 259, 266 (3d Cir.2002); *Saxe v. State College Area School District*, 240 F.3d 200, 215 (3d Cir. 2001), the Guidelines easily pass constitutional scrutiny post-*Blakely*.

An examination of the Guidelines demonstrates conclusively that rather than being the final basis for establishing the "standard range" of punishment under the USSG for an offense analogous to the 49–53 month range in *Blakely*, the base offense level under the Guidelines is *only a starting point*, only one of the many items prescribed by the USSG to be factored in the process of arriving at the sentencing range applicable to a particular defendant. The base offense level not only is not intended under the Guidelines to be the final offense level to be used to determine the *Guidelines "statutory maximum" sentence* for an offense analogous to the standard range in *Blakely*, it generally is not intended to be the final offense level used to establish any sentencing range. It is, as its name implies, the *base* upon which the Guidelines contemplate that enhancements and other adjustments, both upward and downward, will be made to arrive at a final offense level, which, along with a defendant's criminal history category will be utilized under the Guidelines sentencing procedure to establish under the sentencing tables the applicable sentencing range under the Guidelines.

The drafters of the Guidelines carefully crafted a detailed protocol designed to arrive at a customized sentence (within the traditional "statutory" maximums and minimums) for each individual convicted of a federal crime which was designed to minimize if not eliminate disparate sentences for similar crimes. This system *starts*

---

**5.** *See Stinson v. United States*, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993); *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); *see also Blakely*, 124 S.Ct. at 2549 (O'Connor, J. dissenting).

with and *builds upon* a base offense level for a particular crime and it clearly intends that judges make the factual findings necessary to *arrive at* the ultimate guideline sentencing range, which then must be followed absent extraordinary reasons for a departure. It is that ultimate guideline sentencing range which is analogous to the "standard range" in *Blakely*; it is *that range* to which the defendant is legally entitled under *Blakely* and the Constitution, and it is *that* range which under *Blakely* cannot be exceeded by judicial factfinding. And as we attempt to demonstrate herein, that this procedure employs judicial factfinding as an integral component does not offend *Blakely* or the Sixth Amendment.

The Guidelines in Part B—General Application Principles, § 1B1.1, Application Instructions, USSG (2003), sets out this protocol which prescribes a nine-step, (a)-(i) procedure. This procedure begins at the first step with the selection of a guideline section applicable to the offense of conviction, moves at the second step to the determination of a base offense level, and onward through step nine, which lists the final factors to be considered in imposing sentence. This nine-step procedure is set forth in its entirety as follows:

§ **1B1.1.** *Application Instructions*

(a) Determine, pursuant to § 1B1.2 (Applicable Guidelines), the offense guideline section from Chapter Two (Offense Conduct) applicable to the offense of conviction. *See* § 1B1.2.

(b) Determine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions contained in the particular guideline in Chapter Two in the order listed.

(c) Apply the adjustments as appropriate related to victim, role, and

obstructions of justice form Parts A, B, and C of Chapter Three.

(d) If there are multiple counts of conviction, repeat steps (a) through (c) for each count. Apply Part D of Chapter Three to group the various counts and adjust the offense level accordingly.

(e) Apply the adjustment as appropriate for the defendant's acceptance of responsibility form Part E of Chapter Three.

(f) Determine the defendant's criminal history category as specified in Part A of Chapter Four. Determine from Part B of Chapter Four any other applicable adjustments.

(g) Determine the guideline range in Part A of Chapter Five that corresponds to the offense level and criminal history category determined above.

(h) For the particular guideline range, determine from Parts B through G of Chapter Five the sentencing requirements and options related to probation, imprisonment, supervision conditions, fines, and restitution.

(i) Refer to Parts H and K of Chapter Five, Specific Offender Characteristics and Departures, and to any other policy statements or commentary in the guidelines that might warrant consideration in imposing sentence.

As set forth above, the base offense level is determined at step (b), the second step, and it is only *after* applying all the appropriate guidelines and making the necessary findings do we arrive in step (g), the seventh step in the process, to the Guidelines sentencing range which is the Guidelines analog to the "standard range" under the Washington state SRA, the 49–53 month range in *Blakely*. Thus, the "statu-

tory maximum" under the Guidelines is the upper end of the range that is arrived at *after* application of the relevant guidelines, *including the necessary judicial factfinding,* to a particular offense and a particular defendant considering any adjustments under section 2 and section 3 of the Guidelines. *See* USSG § 1B1.1(a)-(i). It is only after the *total* offense level is calculated that the upper end of the range corresponding to that total offense level and criminal history category can be ascertained. *See* § 1B1.1(g) (the guideline range, and thereby the statutory maximum, is not reached until all of these steps have been applied). *This* sentencing range, reached after calculating the *total offense level, not* the sentencing range reached by applying the *base offense level* to the defendant's criminal history category, constitutes the statutory maximum sentence under the Guidelines within the meaning of *Blakely* which may not be increased based on judicial findings of fact without running afoul of the Sixth Amendment. Until we have gone through this entire process we have no way of knowing what the Guidelines maximum sentence is.

Based on the foregoing, it is the opinion of this court that *Blakely* left the Guidelines unimpaired, with the likely exception of upward departures, which according to the latest data available, the *2002 Sourcebook of Federal Sentencing Statistics,* Table 26, fig. G, constituted only 0.8 percent of Guidelines sentences in 2002. In other words, 99.2 percent of Guidelines cases in that period would not have been affected by *Blakely.* Although it fairly can be argued that even upward departures are part of the scheme contemplated by the USSG to be utilized in arriving at the ultimate sentence, *see* § 1B1.1(i), USSG (2003), the procedures for employing upward departures under the USSG are quite analogous to the procedures; i.e., judicial factfinding, for utilizing the exceptional-sentence option in the Washington state SRA which *Blakely* found to be constitutionally offensive. It is likely, therefore, that the Guidelines upward departure procedures will fare no better following *Blakely.* Indeed the SRA section providing for exceptional sentences is entitled "Departures from the guidelines." Section 9.94A.390 Recodified as § 9.94A.535 by Laws 2001, Ch. 10, § 6, Revised Code of Washington Annotated.

Accordingly, this court does not believe that *Blakely* signaled the death knell for determinate sentencing schemes in general or the Guidelines in particular. As Justice Scalia noted, *Blakely* was not about whether determinate sentencing is constitutional, but only about how determinate sentencing schemes can be implemented consistent with the Sixth Amendment right to a jury trial. The Court stated:

> Of course, indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts [found by a judge] do not pertain to whether the defendant has a legal *right* to a lesser sentence-and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10–year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10–year sentence-and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

*Blakely,* —— U.S. at ——, 124 S.Ct. at 2540 (matter in brackets supplied).

That statement provides important guidance to understanding the holding and significance of *Blakely.* Under the Guide-

lines, the sentence to which a defendant has a legal right is a sentence which does not exceed the "traditional" statutory maximum for the offense of conviction and is within the range established for that defendant and the offense of conviction *after* the Guidelines have been applied in accordance with their clearly stated intent, and the court in the process has *made all of the findings of fact* necessary to arrive at the appropriate offense level and criminal history category under the Guidelines protocol.[6] Until that process is completed the maximum sentence to which the defendant has a legal right remains that set forth in the statute which created the offense of which the defendant was found guilty by a jury or on the basis of his/her plea. *It is only after that total offense level is calculated and arrived at* under the Guidelines that this additional "statutory maximum" is determined and *Blakely* kicks in to forbid the judge from exceeding it based on judicial factfinding.

For the foregoing reasons, this court believes that the Guidelines as they have been applied pre-*Blakely* will pass constitutional muster post-*Blakely*, with the likely exception of upward departures.

■ Accordingly, it is clear that *Blakely* will have no application to petitioner's sentence. Even if defendant's stipulation referred to *infra* is somehow found to be invalid, the factfinding challenged by petitioner, the court's finding that petitioner was a manager or supervisor under § 3B1.1(b), did not violate defendant's Sixth Amendment right to a jury trial. It did increase petitioner's *base* offense level from 30 to 33, and after the three-level decrease for acceptance of responsibility, petitioner's total offense level was reduced to 30. The corresponding sentencing guideline range of 97 to 121 months, applicable to a total offense level of 30 and a criminal history category of I, is the sentencing range to which petitioner had a "legal right", with the upper end of that range constituting the *Blakely* statutory maximum. Petitioner's sentence of 97 months fell within that range and exceeded neither the traditional statutory maximum for conspiracy to import 5 kilograms or more of cocaine set forth in 21 U.S.C. § 960(b)(1)(B)(ii); i.e., not less than 10 years and not more than life, nor the Guideline Statutory maximum of 121 months.

Local Appellate Rule 22.2 of the United States Court of Appeals for the Third Circuit directs that when a final order denying a motion under § 2255 is entered a determination of whether a certificate of appealability should issue also must be made. The issuance of a certificate of appealability is "[t]he primary means of separating meritorious from frivolous appeals." *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983) (setting forth standards for certificate of probable cause). Congress now has mandated that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the foregoing makes clear, petitioner's § 2255 motion does not identify any basis which could support a substantial showing that a denial of a constitutional or federal right adversely affected his sentence. *See Santana v. United States*, 98 F.3d 752, 757 (3d Cir.1996) (discussing standards governing certificates of appealability).

---

**6.** *See, e.g., United States v. Brown*, 80 Fed. Appx. 796 (3d Cir.2002) (sentencing imposed in accordance with USSG was legal); *United States v. Santiago*, 201 F.3d 185 (3d Cir.1999) (court generally must provide sentence in concert with provisions of USSG); *United States v. Bertoli*, 40 F.3d 1384 (3d Cir.1994) (generally, defendant must be sentenced within applicable USSG range).

For the reasons set forth above, petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 and his supplemental petition both will be denied. Additionally, petitioner's incorporated request for a certificate of appealability also will be denied.

An appropriate order will follow.

### ORDER OF COURT

AND NOW, this 12th day of September, 2004, for the reasons set forth in the opinion filed this day, IT IS ORDERED that petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 and supplemental petition (Document Nos. 38 & 44) be, and the same hereby are, denied; and,

IT FURTHER IS ORDERED that the incorporated request for a certificate of appealability be, and the same hereby is, denied.